## DAVID TREXLER v. JOHN FISHER.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY.

Argued October 16, 1889—Decided November 11, 1889.

Where the defendant in ejectment purchased town lots, the property in dispute, from the plaintiff, went into possession in pursuance thereof, made valuable improvements, paid the purchase money in full and accepted a deed which by mistake conveyed other lots than those he purchased, it was not error, in such action, to instruct the jury to find for the defendant.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 156 October Term 1889, Sup. Ct.; court below, No. 136 September Term 1888, C. P.

On August 15, 1888, a summons in ejectment was served in an action of ejectment brought by David Trexler against John Fisher, to recover certain lots in the town of Ashville. The defendant filed a disclaimer as to all the lots described in the writ except certain lots numbered 94, 95, 96 and 125, as to which he pleaded not guilty, averring : " That said defendant took possession of the above mentioned and described lots, ac-

cording to location as indicated by said plaintiff, and in pursuance of deed of conveyance from himself and wife bearing date the 6th day of April, 1887, wherein said lots are incorrectly designated as Nos. 140, 141, 142 and 171, as per plot of lots in possession of said plaintiff."

The case was called for trial on March 15, 1889, when the court, JOHNSON, P. J., charged the jury:

You have heard the testimony in this case, upon the one side and the other. It is an action of ejectment for four lots of ground in the village of Ashville, in this county. At an early day, a certain Joseph Trexler died, owning a tract of land, a portion of which embraces the village of Ashville; and, by his last will and testament, he bequeathed a portion of that land to David Trexler, the plaintiff in this case. David Trexler was the owner of that land, and his title is not questioned. He had the right to sell and convey it to whom he saw proper. Some four years since, a village or town was laid out by him upon a portion of this land, known as the borough of Ashville, in this county. It seems that a number of lots have been sold there; and in April, 1886, the defendant in this case, John Fisher, through the assistance and agency of Mr. Samuel Gill of that neighborhood, undertook to purchase a piece of ground containing half an acre, within the bounds of this new town. He, with Mr. Fisher and Mr. Trexler, went upon the ground and selected the supposed half acre; and Mr. Trexler agreed to sell, and Mr. Fisher agreed to purchase this half acre of land. [It does not appear to have been divided into town lots at that time;] [1] but, they made their agreement by parol, that is by word of mouth, Mr. Fisher's object seeming to be to secure a good brick yard at the lowest possible price. The purchase was made for that purpose, partially, at least; and the price of seventy-five dollars for the half acre of ground was stipulated and agreed upon. Then Mr. Fisher went into actual possession, and this commenced his title. It is true, he had no element of title but possession; but that gave him an equitable title in the property from that day forward. Several months afterwards, about the first of June, Henry Scanlan, Esq., a surveyor from Carroltown, was sent for by these parties; [and he went upon the ground and divided it into four

lots,] [1] and it was stipulated that he should write an article of agreement between the parties for the purchase of the property.

Now, gentlemen, that property which is known as the brick kiln, or brick yard property, is fully identified, and that is the only property that Mr. Fisher ever purchased from Mr. Trexler; at least, we have no evidence before us of any other purchase or attempted purchase. You will recollect that Mr. Fisher was in possession, according to the testimony of Mr. Scanlan, for some time before Mr. Scanlan went there, on the first of June, and that he had been making brick there, or preparing to make brick there, upon the premises. The agreement stipulated for between the parties was written by Henry Scanlan a good while after Mr. Fisher was in possession of the premises; and he remained in possession, and [there was no other property for this agreement to apply to, excepting this half acre piece, afterwards the four lots embraced in this controversy. According to the evidence and the return to the writ in the case, Mr. Fisher has lived there from that day till the present. He is still in possession of this property under his original purchase from the plaintiff, Mr. Trexler. The plaintiff has shown all this. Henry Scanlan, Esq., and the plaintiff himself, Mr. Trexler, have been called as witnesses and have testified to these facts; and they have established them so far; and so far there can be no difficulty.] [2]

Some time afterwards Squire Krise was procured by Mr. Trexler, the plaintiff, to write a deed for Mr. Fisher; and he prepared a deed which, it appears from the evidence now and from the agreement of counsel, refers to a different property. Mr. Trexler, in testifying, admits that it may be a mistake on his part; that he is not sure, [but he thinks that the property for which this suit is brought is the proper property, being the property embraced in the deed prepared by Squire Krise.] [3] And, perhaps another witness or two, when speaking of the matter, said that Mr. Trexler said at the same time that if the deed was not right, he would make it right. And a few days after it was written by Squire Krise, Mr. Trexler presented the deed to Mr. Fisher and Mr. Fisher received it. It is patent to this jury that Mr. Fisher is an entirely unlettered man in the English language. He received the deed, however, and it is presumed, has had it ever since.

Charge of Court below.

There are just two questions for the jury in this case. First, does that deed, given by Mr. Trexler to Mr. Fisher, describe this land? Does it embrace the land in dispute? It is very obvious that it does not. All the testimony shows it lies some distance from the lots in controversy and is not the land purchased by Mr. Fisher, but other land entirely; [while in this case, Mr. Fisher has made valuable improvements upon the land, built his pottery, his dwelling house and his barn upon the land, and has continued to occupy it under his purchase from that time until the present.] [4]

About the time the survey was made by Mr Scanlan, Fisher paid one half of the purchase money, and when he obtained the deed, or about that time, he paid the other half, and consequently he had paid the full price of the property. As we have said, the first question is, does this deed convey the land that Mr. Fisher bought? In other words, was there any fraud or any mistake in this deed?

And that raises another question which is, if there is such mistake and if the deed was given for four other lots, not this property at all, denuding and depriving Mr. Fisher of all his improvements and buildings by giving him what is partly woodland instead of the land that he bought and lived on, can this court and this jury reform the deed so as to make it accord with the equitable title of Mr. Fisher? It would be a sad state of things if courts and juries were powerless in cases of this kind. It would be a wretched state of things if a mere mistake, such as any person may make, should deprive a party of a reward of his labor for years in building upon and improving his property, and there could be no remedy. Fortunately the law is not so. Where there is a plain mistake or fraud the courts of Pennsylvania, through the intervention of a jury, may reform the agreement to make it agree with the deed and make the deed agree with the real title of the parties. In some countries the law is not so liberal as that, and the parties have to go into a court of equity; but here our common law courts have such equity powers as enables them to remedy accidents, mistakes or frauds, in the interest of justice; [and, where there is such a mistake and its injustice is made plain and apparent, it is not only the province but the duty of courts and juries to administer the laws according to

Charge of Court below.

the honest intention of the parties. Such an administration of the law can do no wrong to the plaintiff here, can do no wrong to anybody; and it leaves the party in possession of his own property by curing errors or mistakes that would deprive him of it.] 5

Now, gentlemen, you have heard all the testimony in this case; and if this testimony be believed, notwithstanding the legal title that the plaintiff here has made to this defendant for other property which would, under the circumstances, not be worth the paper it is written on, the law would control his title to his own property and his possession of it. It would make his legal title a perfect title by reforming the deed, by applying the deed that was intended for the purpose of making title to this property and giving it full effect. The plaintiff himself, from his own statement and testimony, seems to think that if there is a reformation required, it should be made, therein displaying that honesty which should characterize every good citizen.

Now, gentlemen, if, notwithstanding the legal title to four lots made by this plaintiff to this defendant, you find that the defendant here has never claimed the lots, he has no title to them because the paper title would fail in any emergency. But if you believe that this defendant has purchased the property for which this suit is brought; has paid the whole of the purchase money; has placed valuable improvements on the land, and has occupied it from the time of his purchase up to the present time, you should have no difficulty, notwithstanding any papers in the case, in finding a verdict for the defendant.

The jury rendered a verdict in favor of the defendant. A rule for a new trial having been discharged, judgment was entered on the verdict, when the plaintiff took this appeal, assigning for error:

1–5. The portions of the charge embraced in [ ] 1 to 5

*Mr. F. A Shoemaker*, for the appellant.

*Mr. Alvin Evans*, for the appellee.
Counsel cited: Peebles v. Reading, 8 S. & R. 484; Russell

v. Baughman, 94 Pa. 404; Pollard v. Shaffer, 1 Dall. 210;
Jordan v. Cooper, 3 S. & R. 564; Minsker v. Morrison, 2 Y.
346; Seitzinger v. Ridgway, 9 W. 498; Kuhn v. Nixon, 15 S.
& R. 118; Henderson v. Hays, 2 W. 148; Treftz v. Pitts, 74
Pa. 348; Rennyson v. Rozell, 106 Pa. 407.

PER CURIAM:

Judgment affirmed.