380 A.2d 922

**Carl W. LACHNER and Genevieve Lachner, husband and wife, Appellants,**

v.

**Carl E. SWANSON.**

Superior Court of Pennsylvania.

Argued April 12, 1976.

Decided Dec. 2, 1977.

Edward G. Petrillo, Warren, for appellants.

H. Robert Hampson, Warren, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

Appellants, Carl and Genevieve Lachner, sued appellee, Carl Swanson, in ejectment. The jury found for the Lachners. The lower court, however, granted Swanson's motion for judgment n. o. v. on the ground that as a matter of law Swanson had proved a mutual mistake.

The following diagram (not to scale but prepared by this court from the surveyor's plan in the record) may prove useful.

564

In 1959 Swanson's sister, Edla Swanson Niklas, conveyed to him the "Gilfoyle School Lot" (Diagram: ABCD), on which was an old schoolhouse (Diagram: shaded area). This lot was 165 feet (Diagram: AB) by 247.5 feet (Diagram: AD). Swanson owned adjoining land to the west (Diagram: "Swanson"). In 1963 Swanson deeded most of the Gilfoyle School Lot to his sister Irene Howell and her husband Gibson Howell, retaining, however, a parcel 165 feet by 49.5 feet (Diagram: ABFE); thus the Howells owned a parcel 165 feet by 198 feet (Diagram: EFCD).[1] The Howells owned, and still own, land adjoining this parcel to the north and east (Diagram: "Howell").

Sometime in 1971 Swanson built himself a house (Diagram: cross-hatched area) on what he apparently thought to be the property he had retained from the lot conveyed to the Howells. In fact, by an error not explained at trial, the house straddled the eastern boundary of Swanson's property (Diagram: EF), extending 32 feet onto the lot that Swanson had conveyed to the Howells.

1. For reasons not clear from the record, Swanson's deed to the Howells was left with Edla Niklas for safekeeping. It was recorded on Jan. 20, 1972. At trial Swanson offered in evidence another deed from him to the Howells, dated 1966. The Lachners disputed the validity and admissibility of this deed; on neither point did the lower court rule decisively. The 1966 deed purported to convey to the Howells a shorter frontage than had the 1962 deed, but not so much shorter as to make any difference to the solution of the problem presented by this case. We have therefore assumed that it was not admitted in evidence.

In December 1971 the Lachners came house-hunting. Swanson told them that the old schoolhouse (by then converted to a residence) was available, and that they should see Edla Niklas about it. Niklas showed the Lachners the 1963 Swanson-Howell deed, from which Mr. Lachner noted that the property was 165 feet deep with a frontage of 198 feet. After inspecting the property the Lachners decided to buy it. By a deed prepared by Swanson's lawyer, who used the 1963 deed as a model for the metes and bounds, the Howells conveyed their parcel (Diagram: EFCD) to the Lachners.[2] It is undisputed that the Howells, who have lived for many years on Long Island, New York, completed this transaction entirely by mail.

Sometime in mid-1972 the Lachners apparently became curious about exactly where the boundaries of their land lay. They had a survey made, and it revealed that their western boundary cut through Swanson's house (Diagram: EF). After some discussion with Swanson about whether he would pay them rent for the land on which his house encroached, the Lachners brought this action; after lengthy settlement negotiations, which almost succeeded but did not, the action went to trial.

In his answer to the complaint in ejectment Swanson pleaded the equitable defense of mutual mistake.[3] Procedurally, this defense was available to him, even though the complaint was in law, not equity. *Trexler v. Fisher*, 130 Pa. 275, 18 A. 733 (1889). Substantively, however, appellee had no right to allege or prove the mistake that won for him below.

**2.** The date of this conveyance is not in the record. The Lachners moved into the schoolhouse in Jan. 1972. The deed between them and the Howells was recorded in May 1972.

**3.** Appellants argue that appellee waived this affirmative defense by pleading it under the heading "Answer" instead of under "New Matter." Pa.R.C.P. 1030. We conclude, however, that lower courts have correctly ruled that such an error does not amount to a waiver of the defense. By improper pleading a defendant loses only the possibility of compelling his adversary to reply. *Metz v. Meyer*, 114 Pitts.Leg.J. 73 (1965); *Bavitz v. Stryjak*, 46 Luz.Reg.Rep. 175 (1956).

Mutual mistake is a sub-category of a more general form of relief: reformation of instruments. *Hassler v. Mummert*, 242 Pa.Super. 536, 364 A.2d 402 (1976). Reformation of an instrument may be had by the parties to the instrument and by those standing in privity with them, but not by persons not parties or privies. 76 C.J.S. *Reformation of Instruments* § 47 (1952). The term privity, in cases involving reformation of instruments, denotes a "successive relationship to the same right in the same property." 76 C.J.S. *Reformation of Instruments* § 47; *Hilton v. Hilton*, 202 Ga. 53, 41 S.E.2d 880 (1947). Here, Swanson was not a party to the deed between the Lachners and the Howells, nor was he a privy to either party to the deed, for he did not stand in a "successive relationship" to either. It follows that he could plead as a defense mutual mistake only as to the deed between himself and the Howells, and not as to the deed between the Howells and the Lachners. In fact, he pleaded only the latter. The lower court should have granted the Lachners' motion for judgment on the pleadings for failure to state a sufficient defense. Accordingly, the court's order granting judgment n. o. v. cannot stand.

We reach this conclusion with some considerable dissatisfaction. Reading the entire testimony reveals the following picture of the several transactions that led to this litigation.

As mentioned above, the Howells have lived for many years on Long Island. In arranging the sale to the Lachners, Swanson, with some assistance from his sister Edla, was acting on behalf of his other sister Irene and her husband. Before agreeing to buy, the Lachners inspected the property, and saw Swanson's house. By actions about the time of purchase,[4] the Lachners showed that they had no notion that Swanson's house was partly on their property— as that property was described in the Howells' deed to them. For example, in the spring of 1972 Swanson constructed a shed over a pump that served his house; although the shed was on the Lachners' land, the Lachners raised no objection.

4. The date of purchase is not in the record. *See* note 2, *supra*.

Indeed, Swanson testified that Mr. Lachner helped him with some of the work on the shed. At about the same time, Swanson installed a septic system to serve his house. Although this too was on the Lachners' land, again they raised no objection.

It is therefore evident from the record that everybody was mistaken. Swanson erred either by retaining too little land in the conveyance to the Howells in 1963 or when he built his house in 1971. The Howells erred in their conveyance to the Lachners. The Lachners erred when they signed a deed granting them land that they could not have thought they were buying. To view the evidence otherwise would be to say that the Howells intended to sell half of Mrs. Howell's brother's house—an odd intention, and contradicted by Mrs. Howell's testimony at trial; and that the Lachners intended to buy half of the house—a conclusion belied both by common sense (half a house?) and by the Lachners' actions about the time of purchase.

■ We recognize, therefore, that the lower court's order might be regarded as achieving rough justice. That is not, however, a sufficient reason to affirm the order. As has been discussed, to affirm would ignore the principles of law that control an action for reformation of an instrument. In addition, however, while to affirm might seem fair to Swanson, for it would not split the ownership of his house, it would be unfair to the Lachners, who had reason to believe that the property they were buying from the Howells had a frontage of 198 feet. It would appear that the only way in which a result fair to everyone would be possible would be if the Howells were parties—by intervention, for example. Then the lower court would have been able to reform both Swanson's deed to the Howells, and the Howells' deed to the Lachners. As an appellate court, however, we have no power to keep the action open by remanding with an instruction to the Howells to intervene. We must confine ourselves to the issues defined by the record before us.

568

The order of the lower court is reversed, and the record is remanded with instructions to enter judgment on the verdict in favor of appellants.

JACOBS, J., concurs in the result.