592 A.2d 104

**George DOMAN and Donna Doman, his Wife, Appellees,**

**v.**

**Bertha BROGAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 17, 1990.

Filed April 16, 1991.

Larry A. Brand, Wilkes–Barre, for appellant.

Charles Shaffer, Kingston, for appellees.

Before DEL SOLE, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

Appeal is taken from judgment entered June 20, 1990, in the Luzerne County Court of Common Pleas establishing appellant's and appellees' respective property rights in a double-block dwelling. The action was one in ejectment at law to resolve a boundary dispute. We affirm.

George and Donna Doman (appellees), and Bertha Brogan (appellant), are owners of adjacent lots in a double-block dwelling—lots 34 and 36 Old Boston Road, respectively. Both parties claim title under Ada Doman, a/k/a Ada Maxwell, (appellant's mother, appellee George's grandmother) [1] as common grantor, said grantor having first acquired title to the full residence (lots 34 & 36) in 1955. Appellant, in 1968, began renting from Ada Doman that portion of the dwelling known as 36 Old Boston Road. In 1972 she purchased lot 36 and has since resided there. Her deed recites:

THE SAID PREMISES ARE SITUATE, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING at a nail in pave corner, being of the intersection of what was formally an approximate right angle turn on the Old Boston Road leading from Plymouth to Kingston, said corner being located . . . (N. 62° 34′ E.) . . . (242.82) feet from the intersection of the Southerly line of Old Boston Road and the Northerly line of State Highway Route 11, No. 4 Spur;

1. Appellant Bertha Brogan is appellee George Doman's aunt.

THENCE along the Westerly line of Old Boston Road, ... (S. 29° 45′ E.) ... (60.13) feet to a corner;

THENCE along land of Robert E. Doman, et ux., ... (S. 21° 30′ W.) ... (86.81) feet to the corner on the Northerly right-of-way line of State Highway Route 11;

THENCE along said right-of-way by a curve to the left by a chord having a course of ... (N. 76° 18′ W.) for a distance of (40.32) feet to a corner;

BEING also the point of intersection of a *line running through the center wall of a double dwelling;*

THENCE along the *line running through the center wall of the double dwelling ... (N. 18° 24′ E.)* ... (130) feet to a nail corner, the place of beginning.

. . . . .

This conveyance *is made in accordance with a contract of sale recorded in Deed Book 1648 at page 549.* Deed Book 1745 at 819–20 (exhibit "B" plaintiffs' complaint) (emphasis added).

Title to 34 Old Boston Road passed first from Ada Doman to her son and daughter-in-law, Robert and Victoria Doman. Robert and Victoria, George Doman's parents, thereafter conveyed their interest in lot 34 to George and Donna Doman by deed dated March 18, 1986. The deed draws upon language found in Mrs. Brogan's deed insofar as defining the common boundary separating the adjacent lots:

THENCE along the *line running through the center wall of a double dwelling,* being also along line of land now or late of Bertha Brogan, South 18 degrees 24 minutes West *[S. 18° 24′ W.]* ... (130) feet to the northerly right-of-way line of State Highway Route No. 4 Spur, also known as Route No. 11.... 

Deed Book 2187 at 383 (exhibit "A" plaintiffs' complaint) (emphasis added).

Apparent from a literal interpretation of the parties' respective deeds is that the lots were to be divided according to "the center wall" as further described by metes and bounds ("M & B") figures. At trial, plaintiffs offered into

evidence a series of schematic diagrams.[2] *See* Plaintiffs' exhibits 5–7 (exhibits 1–3 appended to this decision). It is uncontroverted that these diagrams accurately reflect the structural features of the double-residence, both presently and as of the dates Mrs. Brogan and George and Donna Doman purchased their lots, *i.e.*, the structural features have not changed. *See* N.T. March 27, 1989, at 43, 53. The diagrams confirm, however, that there exists no one "center" wall forming an unbroken vertical plane from the basement to the second floor. N.T. at 16 (testimony of Gerald Fisher, registered land surveyor). Moreover, the projected M & B property line used to demarcate the mutual boundary between the lots forms one vertical plane not consistent with any wall located in the basement, first or second floor of the dwelling.[3]

According to plaintiffs' schematic diagrams, lot 34 comprises, roughly, the westerly portion of the double dwelling. Lot 36 occupies, roughly, the easterly portion. Moving from the basement upward, the full basement (lots 34 and 36) has what can be considered front (northerly) and rear (southerly) portions. The front portion is separated laterally by a wall located approximately 2.5 feet west of the projected M & B line. The rear portion is also separated by a wall (described as a "plank" wall) located approximately 2.5–3.0 feet west of the M & B line. On the first floor, the front portion is divided by a wall coextensive with the wall

**2.** In an ejectment action to resolve a disputed boundary, parol evidence is admissible to establish the *existence* of monuments. *See, e.g., Baker v. Roslyn Swim Club*, 206 Pa.Super. 192, 213 A.2d 145, 148 (1965); *Will v. Piper*, 184 Pa.Super. 313, 134 A.2d 41, 44 (1957); *see generally*, 5 P.L.E., Boundaries, § 28 (1958).

**3.** Although the record alludes to the fact that there may have been one center wall consistent with the M & B line prior to appellant's and appellees' purchases, this point was not developed by the parties. Mrs. Brogan testified that she could recall George Doman's parents remodeling sometime "in the '50's, 59, in the '60's, early '60's." N.T. at 54. The extent thereof is not mentioned. Also, appellant in her brief implies the former existence of a center wall:

"However a number of years previous to the Deed, a number of renovations had taken place with regard to the property, and the center wall no longer exists."

Appellant's Brief at 1.

dividing the front portion of the basement. The rear, however, is divided by a wall located roughly one foot east of the M & B line. The second floor has only a rear portion, such portion including a wall coextensive with the wall dividing the rear portion of the first floor. However, unlike each of the other walls mentioned, the second floor wall does not presently separate the lots. In fact, there is a doorway permitting lot 36 access to a bedroom physically located west of both the wall and the M & B line (except for, roughly, a one foot portion which lies east of the M & B line). A second door permitting lot 34 access to this bedroom from the west was panelled over sometime before 1956. N.T. at 41–42.

The parties' respective positions below can be summarized as follows: Appellees assert title to, and the right to immediate possession of, a second floor bedroom, basement steps and landing occupied by appellant. *See* Plaintiffs' Complaint ¶ 5. More generally, and at variance with their specific claim for the bedroom, etc., appellees contend that their title extends laterally (on all floors) up to the M & B division line as heretofore described. *See* Appellees' Brief at 7–10. In defense, appellant offers the August, 1968, contract of sale referred to in appellees' deed as recorded at Deed Book 1648 at page 549. Although we are reluctant to consider the prior agreement of sale on grounds of merger,[4]

---

**4.** Appellees contend that "when a deed is executed and delivered and settlement completed, pursuant to an agreement of sale, the agreement is merged into the deed." *See* Appellees' Brief at 14.

Appellees correctly state the general rule that an agreement of sale merges into a deed and no recovery may be had based on the earlier agreement. *See Valvano v. Galardi,* 363 Pa.Super. 584, 526 A.2d 1216, 1220 n. 2 (1987) (citing *Stoever v. Gowen,* 280 Pa. 424, 124 A. 684 (1924)).

Instantly, we find no reason to depart from the general rule. The statement contained within the deed referring to the agreement of August, 1968, is simply too equivocal to be considered indicative of an intent to have the provisions within the agreement survive the deed. *Cf. Carsek `Corp. v. Stephen Schifter, Inc.,* 431 Pa. 550, 246 A.2d 365 (1968) (rule of merger avoided where parties' expressed intentions are to the contrary). Moreover, the deed recites practically verbatim (apart from the one sentence drawn on by appellant) the description contained in the agreement. This further belies any claim that the

nonetheless we shall consider appellant's argument absent the prior agreement, to-wit: she has possessed the same portion of what she believes to comprise lot 36, including the second floor bedroom, basement steps and landing, since she began renting in 1968. N.T. at 53. Accordingly, concludes appellant, her deed must be construed according to her's and Ada Doman's intentions as manifested by her continued possession of what was allegedly conveyed.

## I

The Honorable Donald O'Malley, S.J., specially presiding without a jury, found in favor of plaintiff-appellees George and Donna Doman and awarded them possession of the second floor bedroom, basement stairs and landing. *See* Opinion and Verdict, filed March 28, 1989. Judge O'Malley thereafter, and pursuant to appellant's post-trial motions for judgment n.o.v. and, in the alternative, a new trial, entered an amended verdict accompanied by findings of fact and conclusions of law. *See* Pa.R.C.P. 1038(b).

## FINDINGS OF FACT

1. Plaintiffs and Defendant occupy two sides of a double dwelling. Plaintiffs, Lot No. 34 and Defendant, Lot No. 36 of Old Boston Road, Larksville Borough, Luzerne County.

2. The property is divided by a center wall.

3. The Defendant occupies a bedroom on the Plaintiffs' side (Lot No. 34).

4. The Defendant has used the hall and steps to the cellar for 30 years as her only access to the cellar.

## CONCLUSIONS OF LAW

1. The Plaintiffs are entitled to possession of the second floor bedroom now occupied by the Defendant on their side of the double dwelling.

terms of the agreement were intended to survive, or would serve any purpose surviving, the deed.

2. The Defendant is entitled to use an easement of necessity to and from the front door to the steps from the first floor to the cellar.

Trial Court Opinion, January 26, 1990, at 6.

The verdict remained in favor of plaintiff-appellees; appellant's motions were denied. Noteworthy is the second conclusion of law wherein Judge O'Malley, *sua sponte,* "in order to save further litigation between the parties, and realizing the complexity of this matter," granted appellant an easement by necessity to access her portion of the basement using "the first floor and steps to the cellar over the Plaintiffs' half of the double dwelling known as Lot 34...."[5] Amended Verdict, filed with Opinion of January 26, 1990, at 4, 7.

Plainly, the trial court adopted neither plaintiffs' nor defendant's position defining the boundary line separating their adjoining lots. The court "abandoned the [M & B] division line" because it found that the deeds supported an "intention [ ] to divide the double dwelling along the cent*ral* [not cent*er* ] walls." Trial Court Opinion, January 26, 1990, at 3 (emphasis added). Indeed, Judge O'Malley observed that to divide the dwelling pursuant to the M & B line would create the absurd result of "divid[ing] rooms on [a]

---

5. Ejectment does not lie for an easement. *See, e.g., Vlachos v. Witherow,* 383 Pa. 174, 118 A.2d 174, 179 (1955) (per curiam); *Versailles Tp. Auth. v. City of McKeesport,* 171 Pa.Super. 377, 90 A.2d 581 (1952).

Although the propriety of the easement remains unchallenged and, therefore, is not properly before us, we note the error in this legal conclusion. Moreover, the judge's reasoning is unclear. We interpret the record as establishing no lateral access between lots 34 and 36. *See* N.T. March 27, 1989, at 11–12. As such, we fail to see how appellant can access her area of the basement from appellees' side in accordance with the easement granted in her favor unless, of course, a doorway is installed. No such agreement has been reached to our knowledge. In this vein, if we are correct that there are basement steps extending from appellant's first floor dining area to her basement, such steps lying somewhere between the existing rear basement wall and the vertical plane of the first and second floor walls, *see* N.T. 59–60, then we are at a loss to understand why Judge O'Malley opted for an easement through *appellees'* front door and over *their* basement steps rather than simply permitting appellant continued use of the existing route through her dining area with an easement over her basement steps.

particular side of the center wall." *Id.* at 5. Hence, in locating the disputed boundary line the court opted against strict reliance on the M & B figures chosing, rather, to divide the dwelling by "extend[ing] the vertical plane established by the cen*tral* walls on the first and second floors from the center of the earth to the heavens . . ." *Id.* at 4–5 (emphasis added).

## II

The plaintiffs' burden in an action in ejectment at law is clear: they must establish the right to immediate exclusive possession. *See, e.g., Hallman v. Turns,* 334 Pa.Super. 184, 482 A.2d 1284, 1287 (1984); *Harbor Marine Co. v. Nolan,* 244 Pa.Super. 102, 366 A.2d 936 (1976). Recovery can be had only on the strength of their own title, not the weakness of defendant's title. *See Artz v. Meister,* 278 Pa. 583, 123 A. 501 (1924); *Ratajski v. West Penn Manufacturing & Supply Corp.,* 198 Pa.Super. 588, 182 A.2d 243 (1962). The crux of an ejectment action, therefore, rests with the plaintiffs' ability to identify, by a preponderance of the evidence, *see Hallman,* 334 Pa.Super. at 190, 482 A.2d at 1288 (citing *Rook v. Greenewald,* 22 Pa.Super. 641, 643 (1903)), the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title.

The law recognizes, however, that legal title to real property, and the precise location of boundaries thereon, is not always clear from a plain reading of a written deed. *See Stewart v. Chernicky,* 439 Pa. 43, 266 A.2d 259 (1970); *cf. In re Conveyance of Land Belonging to the City of DuBois,* 461 Pa. 161, 335 A.2d 352 (1975) (where language is unambiguous, parties' intentions must be derived solely from written document). Consequently, within an action in ejectment a court of law often must employ established principles of deed "construction" to assist in arriving at the parties' intentions by artificial means.[6]

6. Immediately, a word of clarification is in order. Deed "construction" should not be confused with deed "reformation", whereby a

Where there exists an uncertainty due to the use of vague or ambiguous language, resort may be had to extrinsic or parol evidence to explain—but not vary—the written word.[7] *See Flaherty v. DeHaven,* 302 Pa.Super. 412, 448 A.2d 1108, 1111 (1982) ("where the deed is not clear and the intentions of the parties cannot be construed from the instrument itself, the parties' intentions are to be ascertained from the language of the entire instrument, from a consideration of the subject matter and from conditions existing when it was executed") *see also Stewart v. Cher-*

Court of Equity might rewrite the written word based on clear, precise and indubitable evidence of mutual mistake or fraud. *See Easton v. Wash. County Ins. Co.,* 391 Pa. 28, 137 A.2d 332, 337 (1957). In cases of deed "reformation", the claim is that the words used do not represent the "true" agreement of the parties. The two processes *must* be kept distinct since an action for reformation lies solely in equity. *See Tillmes v. Marsh,* 67 Pa. 507 (1871) (to give chancery jurisdiction upon a question of a disputed boundary, some equity must be superceded); *see also McWilliams v. McCabe,* 406 Pa. 644, 179 A.2d 222, 229 (1962); *see generally* 66 Am.Jur.2d, Reformation of Instruments, § 94 at 625 (1973) ("an action for reformation of a written instrument is an equitable action and is cognizable only in equity or on the equity side of the court. Neither courts of law nor courts of admiralty have jurisdiction to reform instruments") (footnotes omitted); 12 Am.Jur. 2d, Boundaries, §§ 91-2 (1964).

In Pennsylvania, however, where privity exists, a party is permitted to plead the equitable *defense* of mutual mistake even though the complaint is one in ejectment at law. *See Lachner v. Swanson,* 251 Pa.Super. 561, 380 A.2d 922, 925 (1977); *see also Trexler v. Fisher,* 130 Pa. 275, 18 A. 733 (1889) (per curiam) ("Where there is a plain mistake or fraud the courts of Pennsylvania, through the intervention of a jury, may reform the agreement to make it agree with the deed and make the deed agree with the real title of the parties. In some countries the law is not so liberal as that, and the parties have to go to a court of equity; but here our common law courts have such equity powers as enables them to remedy accidents, mistakes or frauds, in the interest of justice ..."). *But see Vlachos v. Witherow,* 383 Pa. 174, 118 A.2d 174 (1955) (per curiam) ("[I]n an ejectment proceeding, there is only one issue, that of the right of possession. The Court cannot in such proceeding be concerned with an attempt to reform a deed on the ground of error or mistake. For such reformation, the parties must bring their action in a Court of Equity.").

7. Thus, in an ejectment action parol evidence is competent to *explain* ambiguities, but not to *vary* or *contradict* a boundary description contained within a deed; such latter usage is limited to an action in equity to reform a deed where accident, mistake or fraud is shown. *See Yuscavage v. Hamlin, infra.*

*nicky,* 439 Pa. 43, 266 A.2d 259, 263 (1970). Resort might also be had to the subsequent acts of the parties as bearing on the interpretation they placed on the instrument. *See Ryan v. Hudak,* 409 Pa. 211, 185 A.2d 570 (1962); *see also Lupyan v. Lupyan,* 263 Pa.Super. 303, 397 A.2d 1220 (1979).

We have often repeated that the primary function of a court faced with a boundary dispute is to ascertain and effectuate the intentions of the parties' at the time of the original subdivision. *See, e.g., Plott v. Cole,* 377 Pa.Super. 585, 547 A.2d 1216 (1988); *Roth v. Halberstadt,* 258 Pa.Super. 401, 392 A.2d 855 (1978). To achieve this result, our courts have employed certain rules of construction that are commonly thought to provide the best indication of that intent. *See Pencil v. Buchart,* 380 Pa.Super. 205, 551 A.2d 302, 306 (1988); *see also Appeals of Borough of Dallas,* 169 Pa.Super. 129, 82 A.2d 676 (1951) (rules of construction applicable to deeds apply where a boundary line is disputed). Among such rules are the following:

> (1) the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words; (2) effect must be given to all the language of the instrument and-no part shall be rejected if it can be given a meaning; (3) [to ascertain the intention of the parties,] the language of a deed shall be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Yuscavage v. Hamlin,* 391 Pa. 13, 137 A.2d 242, 244 (1958).

■ More particularly, certain general principles of preference are followed when the calls of a deed are found to be inconsistent:

> Where the calls for the location of the boundaries to land are inconsistent, other things being equal, resort is to be had first to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries (which are con-

sidered a sort of monument), and thereafter to courses and distances.

*Baker v. Roslyn Swim Club*, 206 Pa.Super. 192, 213 A.2d 145, 148 (1965) (citing 12 Am.Jur.2d, Boundaries, § 65 at 603 (1964)). Hence, "[a]s a general rule, where there is a conflict between courses and distances or quantity of land and natural or artificial monuments, the monuments prevail." *Roth v. Halberstadt*, 258 Pa.Super. at 405, 392 A.2d at 857 (citing *Appeals of Borough of Dallas*, 169 Pa.Super. 129, 82 A.2d 676 (1951)); *see also United States v. State Inv. Co.*, 264 U.S. 206, 211, 44 S.Ct. 289, 290, 68 L.Ed. 639 (1924). The rationale for this rule has been explained thusly:

If titles were to depend upon the fluctuations of the compass, or errors of the chain or rod-pole, upon the measurement or angles or of distances, instead of the lines monuments, or marks upon the ground, it would open a door to a flood of litigation, every new artist furnishing fresh cause of a new suit.

*Lodge v. Barnett*, 46 Pa. 477, 485 (1864).

Thus, it is generally believed that erroneous descriptions are more probably found in calls for measurements and distances than in calls for fixed landmarks either natural or artificial. *See Pittsburgh Outdoor Advertising Co. v. Surowski*, 164 Pa.Super. 383, 64 A.2d 854, 856 (1949). The preference for monuments is not, however, imperative nor mutually exclusive in the sense that to rely on a monument prevents any reference to other measurements, distances, etc., that are proximate, and thus supportive, but not coexistent with the monument. The parties' intentions are not so narrowly confined. *See Appeals of Borough of Dallas*, 169 Pa.Super. at 137, 82 A.2d at 680 (citing *Fisher v. Pittsburgh Coal Co.*, 29 Pa.Dist. 885 at 891) (observing that while some descriptions are of more probative value than others, "in the end, the true construction is ascertainable by the totality of their combined effect.").

Lastly, where the terms of a deed will admit of two reasonable interpretations (patent ambiguity), or where

the calls conflict when applied to the ground whereby admitting of different reasonable bases for division (latent ambiguity), their construction, as a rule, should be submitted to the jury as a question of fact. *See Deposit & Trust Co. v. MFG. Co.*, 229 Pa. 295, 302, 78 A. 268 (1910) (resolution of a latent ambiguity presents jury question); *see also Flynn v. Rodkey*, 192 Pa.Super. 56, 159 A.2d 265, 268 (1960) ("If the evidence is conflicting, or will admit of different reasonable inferences ... it should be submitted to the jury as a question of fact ..."); *Baker v. Roslyn Swim Club*, 206 Pa.Super. 192, 213 A.2d 145, 148 (1965) ("The question of what is a boundary line is a matter of law, but the question of where a boundary line, or a corner, is actually located is a question of fact."). *See generally* 12 Am.Jur.2d, Boundaries, § 104 (1964) (defining latent ambiguity), § 116 (defining province of judge and jury). Where the trial court sits as trier of fact, an appellate court will not reverse on appeal unless the judge's findings are not supported by competent evidence. *See Plott v. Cole*, 377 Pa.Super. 585, 547 A.2d 1216, 1219 (1988); *see also Norwich v. Beaver*, 326 Pa.Super. 456, 474 A.2d 329 (1984).

## III

Initially, a thorough review of the parties' respective deeds reveals an intent to divide the dwelling into easterly and westerly portions according to "the center wall" as further described by M & B figures. This call for an artificial monument, however, apparently conflicts with the call described by M & B figures which, as projected by plaintiffs' surveyor, form a single vertical plane consistent with no wall in the dwelling. Obviously, more than one M & B line would have been necessary to describe accurately the various central walls as depicted in plaintiffs' trial exhibits 5–7. Hence, as applied to the ground, the calls in appellant's and appellees' deeds conflict and presented Judge O'Malley with a latent ambiguity. Furthermore, a second issue surrounded appellant's claim that Ada Doman intended to convey the full extent of that portion of the

268

residence then-possessed by appellant. We will discuss each issue *seriatim*.

Where the calls in a deed conflict to present a latent ambiguity, before the issue of the true location of the boundary line is submitted to the jury, the court first must ask whether the conflicting boundary descriptions admit of more than one reasonable division. In making this determination the court should consider all evidence of the parties' intentions, extrinsic or otherwise, offered in support of the conflicting boundary descriptions, including a consideration of the instrument as a whole, its subject matter and the circumstances attending its execution. Instantly, neither party has offered any evidence—apart from the projected M & B figures—to suggest that the original grantor intended to divide the dwelling according to a nonexistent "center wall" and, thereby, intended to convey property extending both beyond, and short of, the existing dividing walls. No evidence, extrinsic or otherwise, was offered to explain the ambiguity or to suggest that the conflicting boundary descriptions would admit of more than one *reasonable* division. As such, we feel that the question of conflicting calls should be resolved by the court as a matter of law through application of established rules of construction.

Instantly, as between the choice of dividing the dwelling according to a nonexistent "cent*er*" wall coextensive with the projected M & B figures, versus dividing the dwelling according to the then-existing "cent*ral*" walls,[8] with no evidence to support the former, the only proper inference is that the call for latter was the intended result and that the call for the former was a mistake. Accordingly, we defer to the well-established rule that monuments on the ground, if referred to in the deed, must prevail over measurements, *see Medara v. DuBois*, 187 Pa. 431, 41 A. 322 (1898), as well as to the "general principle that ordinarily the center of a

---

**8.** The trial judge uses the phrase "the cent*er* wall" as interchangeable with the phrase "the cent*ral* walls." This interpretation appears reasonable since use of the phrase "the center wall" cannot be seen as rising to a term of art mandating a "singular" connotation.

party wall, extended the entire length of the lots between which it has been erected, is the true dividing line between those lots, though it varies from the line indicated in the description in the deed." *Ross v. Golden*, 146 Pa.Super. 417, 22 A.2d 310, 312 (1941), *aff'd*, 344 Pa. 487, 25 A.2d 700 (1942); *see also Walleigh v. Emery*, 193 Pa.Super. 53, 163 A.2d 665, 668 (1960). Furthermore, the M & B line supports this interpretation. While it is coexistent with neither wall, nonetheless, it is proximate with both and roughly forms an east-west median between the central walls.[9]

 Regarding appellant's claimed right to the full extent of that portion for which she is in possession, we find no room in the deed as written for this construction. If appellant is making the claim that her deed does not represent the "true" agreement reach by her and Ada Doman, then her claim is one of mutual mistake and her remedy is the reformation of her deed as against appellees. Instantly, privity exists as between appellant and appellees under the general rule that reformation may be had against not only the original grantor, but also against those successors in interest claiming under them with notice. *Cf. Navarro v. Ohio Cas. Ins. Co.*, 325 Pa.Super. 167, 472 A.2d 701 (1984) (discussing who may *seek* reformation); *Lachner v. Swanson*, 251 Pa.Super. 561, 380 A.2d 922 (1977) (same); *see generally* 66 Am.Jur.2d, Reformation of Instruments, § 63 (1973); 31 P.L.E., Reformation of Instruments, § 13 (1960). Moreover, as stated previously,[10] the courts of this jurisdiction have recognized the equitable defense of mutual mistake in actions in ejectment at law. We are reluctant, however, to interpret the disposition below as passing on this issue for two reasons: (1) it is questionable whether

---

**9.** We recognize that the "plank wall" located in the rear portion of the basement is not coextensive with the vertical planes described by Judge O'Malley. Nevertheless, to locate the boundary line by extending the vertical plane of the first and second floor rear walls and, therefore, to divide the dwelling uniformly by extending one vertical plane in the rear portion, is a natural and reasonable corollary to the division as otherwise established.

**10.** *See supra* note 6.

appellant intended to raise the issue of mutual mistake in her Answer;[11] and (2) there is no evidence in the record suggesting that the judge demonstrably considered the issue of mutual mistake. Thus, our construction necessarily derives the parties' intentions from the written word as found in an unreformed state without prejudice to appellant to seek reformation at a later date.[12]

Accordingly, Judge O'Malley's construction of the parties' respective deeds does not divide the dwelling in accordance with a nonexistent "center" wall nor rely exclusively on the M & B figures, as alleged by appellant. Appellant's Brief at 2–5. We affirm the judgment below which locates the boundary line by "extend[ing] the vertical plane established by the central walls on the first and second floors from the center of the earth to the heavens...." Trial Court Opinion at 4–5. Appellees have the right to immediate possession of that portion of the residence lying north-west of these vertical planes.

Judgment affirmed.

11. Appellant's Answer states: "It is specifically denied that the legal descriptions [in the parties' respective deeds] accurately describe what is owned by both plaintiff and defendant." Answer at ¶ 4. *Compare Price v. Ross*, 339 Pa.Super. 461, 489 A.2d 252, 253 (1985) (in the context of summary judgment for failure to plead mutual mistake we found the following pleading sufficient: "At the time such release was executed and delivered, it was not intended by either party thereto to be applicable to the original defendant in any respect ...").

12. Appellant appears to make the argument that her continued possession serves as evidence of the parties' (and successors') subsequent interpretations of their respective deeds and, thus, is probative of their "true" intentions regarding appellant's deed. *See Ryan, supra.* We note that this alone is insufficient to amount to clear, precise and indubitable evidence of mutual mistake in the execution of appellant's deed. *See, e.g., Easton v. Wash. County Ins. Co.*, 391 Pa. 28, 137 A.2d 332 (1957) (listing the various requirements necessary to obtain reformation). Moreover, the suggested inference is somewhat clouded by the fact that all parties holding title subsequent to the original subdivision were related by blood, hence implying that continued possession might have been gratuitous, not as of right.