J-A22030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PATRICIA ROBINSON AND WILLIAM ROBINSON, HER HUSBAND, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| ELIZABETH OSBORN A/K/A ELIZABETH ANN OSBORN, INDIVIDUALLY AND AS THE EXECUTRIX OF THE ESTATE OF FLORA KRACKE, DECEASED | |
| Appellee | No. 1996 MDA 2014 |

Appeal from the Order Entered November 5, 2014
In the Court of Common Pleas of Susquehanna County
Civil Division at No(s): 2011-00337

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:               **FILED OCTOBER 07, 2015**

This appeal concerns the interpretation of a 1968 deed executed by Sydney Carpender in favor of John Kracke and Flora Kracke ("the Krackes"). In the trial court, Carpender's descendants, appellants Patricia and William Robinson ("the Robinsons"), argued that the deed entitled them to purchase a small parcel of land (the "Property") from the Krackes for $15,000.00.  The trial court determined that the Robinsons had no right to purchase the Property and granted judgment on the pleadings to Elizabeth Osborn,

_____

[*] Retired Senior Judge assigned to the Superior Court.

personal representative of the estate of Flora Kracke. For the reasons that follow, we vacate the judgment and remand for further proceedings.

The history of this case begins with a deed executed by Sydney Carpender in 1964 ("1964 Deed") transferring the Property, a .4 acre parcel of land within the Johnson Farm, to the Krackes in return for $100.00. The 1964 Deed provided in relevant part:

> And it is covenanted by the Grantees, for themselves, their heirs and assigns, and this deed is accepted on the express condition, that should said Grantees in their lifetime desire to convey said property, it shall be first tendered to the Grantor or his heirs or assigns, and conveyed to them at their option, upon the payment of the cost to the Grantees of any building or improvement that may be placed upon said property at a figure not to exceed the sum of $15,000.00, regardless of the cost of said improvements, provided that the cost of any improvements made on the premises by the Grantor for Grantees or contributions given to the Grantees by the Grantor for such improvements shall be deducted from the repurchase price. In the event of the death of said Grantees while in possession of said property, the fee title thereof together with improvements thereon shall revert to said Grantor, his heirs or assigns, provided that there shall be tendered to said survivors estate within six months after death, the cost to the Grantees of any improvements to said property, provided that the cost of any improvements made on the premises by the Grantor for Grantees or contributions given to the Grantees by the Grantor for such improvements shall be deducted from the repurchase price or the sum of $15,000.00 which ever sum is the lesser. If tender is not to made within said six months, the fee title to said property shall vest in the estate of said surviving Grantee.

On October 3, 1968, Sydney Carpender executed a second deed to the Krackes ("1968 Deed"), the center of the dispute in this case. The 1968 deed provided:

It is the intention of the grantor in this instrument of October 3, 1968 to release, remise and quitclaim to the grantees, their heirs and assigns certain rights established in and held pursuant to the deed for the subject premises, which said deed was from Sydney B. Carpender, widower, to John D. Kracke and Flora A. Kracke, husband and wife, dated October 14, 1964, and recorded in Susquehanna County Deed Book 304, at page 271 (which deed is included herein by reference) the certain rights hereby released, remised and quitclaimed are as follows:

The right on the part of the grantor, his heirs or assigns or representatives, to deduct from the repurchase price the cost of any improvements contributed by the grantor or caused to be contributed to the subject premises by the grantor, and inasmuch as it was the intention of the grantor to contribute Fifteen Thousand ($15,000.00) Dollars to the grantees for improvements to the subject realty, and the total contribution has exceeded Fifteen Thousand ($15,000.00) Dollars, the grantor hereby further partially releases the grantees from the provision that the grantor, his heirs or assigns or representatives may repurchase the property for a sum reduced by the cost of the improvements made by the grantees. It is, therefore, the privilege of the grantor for himself and his representatives, to repurchase the described premises (if under the conditions of the deed of October 14, 1964, Deed Book No. 304, page 271, the named grantees or those so entitled decide to sell) for Fifteen Thousand ($15,000.00) Dollars without deductions. All other rights and privileges vested in the grantor, his heirs, assigns or representatives, in the deed of October 14, 1964, Deed Book No. 304, page 271; shall remain in the grantor, his heirs, assigns or representatives.

On October 1, 1968, just two days before the execution of the 1968 Deed, Sydney Carpender executed his last will and testament. In paragraph FIFTH(b) of the will, Sydney Carpender devised to his son, James Carpender, all rights that he possessed at the time of his death to the Johnson Farm (the land on which the Property is situated). On June 28, 1974, Sydney Carpender died. His will was probated in Susquehanna

County, and his rights to the Johnson Farm were transferred upon his death to James Carpender.

James Carpender died in 1982. Paragraph FIRST A(3) of James Carpender's Will devised the interests reserved in the 1964 Deed, as modified by the 1968 Deed, to Pauline Carpender, James Carpender's wife. In 1986, Pauline Carpender executed a deed transferring the rights in the 1964 Deed, as modified by the 1968 Deed, to herself and her children, including appellant Patricia Robinson. In 2001, Pauline Carpender, appellant Patricia Robinson and her siblings transferred to appellants Patricia and William Robinson multiple parcels of real property and the rights identified in the 1964 Deed, as modified by the 1968 Deed.

The Krackes maintained possession of the Property throughout their lives. John Kracke died in 1974. Flora Kracke, as sole surviving spouse, possessed the Property until her death in 2010. On November 22, 2010, Flora Kracke's will was admitted for probate, and the Register of Wills awarded letters testamentary to appellee Elizabeth Osborn, Flora Kracke's granddaughter and sole heir.

On November 22, 2010, the Robinsons' attorney sent a letter to counsel for Flora Kracke's estate, along with a cashier's check in the amount of $15,000.00, purporting to purchase the Property in accordance with the 1964 Deed. Counsel for Flora Kracke's estate returned the cashier's check

to the Robinsons' attorney and refused to honor the Robinsons' alleged rights.

The Robinsons filed a civil action against Osborn alleging breach of contract, ejectment and the right to declaratory relief. At the close of pleadings, Osborn moved for judgment on the pleadings on the ground that Sydney Carpender alone had the right to repurchase the Property. Osborn argued that the 1968 Deed modified the 1964 Deed by quitclaiming the right of Sydney Carpender's heirs and assigns to repurchase the Property. Sydney Carpender's will compelled the same result, Osborn contended, because it had no language specifically identifying any continuing interest in real property owned by the Krackes. The Robinsons responded that the 1968 Deed did not defeat their right under the 1964 Deed to repurchase the property upon the death of the last surviving Kracke spouse.

On November 5, 2014, the trial court entered an opinion and order granting judgment on the pleadings in favor of Osborn. The trial court held that the 1968 deed (1) unambiguously limited the right to repurchase the Property to Sydney Carpender and his representatives but (2) precluded his heirs and assigns from repurchasing the Property after the death of the surviving Kracke spouse. Trial Court Opinion, at 8.

The Robinsons filed a timely notice of appeal. The trial court did not order the Robinsons to file a Pa.R.A.P. 1925(b) statement, electing instead

to file a Pa.R.A.P. 1925(a) statement which incorporated its November 5, 2014 opinion by reference.

The Robinsons raise three questions in this appeal:

1. Whether the trial court's order granting Osborn's motion for judgment on the pleadings should be reversed because the trial court incorrectly applied the 1968 deed language quitclaiming certain rights to repurchase the subject property at the time of its sale by the Krackes to the separate and distinct right granted to Carpender's heirs and assigns in the 1964 deed allowing for the acquisition of the subject property by the heirs and assigns at the time of Flora Kracke's death?

2. Whether the trial court's order granting Osborn's motion for judgment on the pleadings should be reversed because the trial court misinterpreted the only sentence of the 1968 deed upon which it relied, to the exclusion of the deed's other text, to incorrectly conclude that Carpender quitclaimed his heirs and assigns' right to acquire the subject property upon Flora Kracke's death?

3. Whether the trial court's order granting Osborn's motion for judgment on the pleadings should be reversed because the trial court incorrectly interpreted Carpender's will as not addressing his heirs' right to acquire the subject property even though the will specifically devised Carpender's property rights to his son and the will contained a residuary clause?

Brief For Appellant, at 6. We will address the first two questions together, because they concern the same subject matter -- the proper construction of the 1968 deed.

In an appeal of an order granting judgment on the pleadings, we must determine

whether the trial court abused its discretion or committed an error of law. Our scope of review is plenary. In reviewing a trial court's grant of summary judgment, we apply the same standard as the trial court, reviewing all the evidence of record to

- 6 -

determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

**Petrina v. Allied Glove Corp.**, 46 A.3d 795, 797–98 (Pa.Super.2012).

When construing a deed,

a court's primary object must be to ascertain and effectuate what the parties themselves intended. **Mackall v. Fleegle**, 801 A.2d 577, 581 (Pa.Super.2002). The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. [] We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. [] Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. [] *If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it.* [] ... To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

[**Consolidation Coal Co. v.**] **White**, 875 A.2d [318,] 326–27 [(Pa.Super.2005)]. *However, "[w]here the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred."* **Wilkes–Barre**

*Township School District v. Corgan*, [], 170 A.2d 97, 98–99 (1961).

***Consol Pennsylvania Coal Co. v. Farmers Nat. Bank of Claysville***, 960 A.2d 121, 128 (Pa.Super.2008), *reversed on other grounds*, 969 A.2d 565 (Pa.2009) (emphasis in original in part and added in part).  An ambiguity in the deed "permit[s] the consideration of extrinsic evidence to interpret the intent of the parties to the … deed."  ***Id***. at 130; ***see also Doman v. Brogan***, 592 A.2d 104, 109 (Pa.Super.1991) ("where there exists an uncertainty due to the use of vague or ambiguous language, resort may be had to extrinsic or parol evidence to explain - but not vary - the written word").  "Resort might also be had to the subsequent acts of the parties as bearing on the interpretation they placed on the instrument."  ***Doman***, 592 A.2d at 109.  "Where the terms of a deed will admit of two reasonable interpretations (patent ambiguity) ... [its] construction, as a rule, should be submitted to the jury as a question of fact."  ***Id***. at 111.

Although the 1964 deed is unambiguous, the 1968 deed contains an ambiguity that requires resolution by a factfinder.  This ambiguity precludes the entry of judgment on the pleadings in favor of Osborn.

The 1964 deed provides two means for Sydney Carpender and his heirs and assigns to repurchase the Property.  First, if the Krackes desired to convey the Property during their lifetimes, they were required to offer the property to Sydney Carpender, or his heirs and assigns, for repurchase in the amount of $15,000.00 less any sum that Sydney Carpender paid for improvements on the Property or gave to the Krackes to make such

improvements.[1]  Second, within six months of the death of the last surviving Kracke spouse, Sydney Carpender, or his heirs and assigns, had the option to repurchase the Property by paying the estate of the last surviving Kracke spouse $15,000.00 less deductions.

The parties agree that the 1968 deed changed the repurchase price from $15,000.00 less deductions to a flat sum of $15,000.00.  The parties disagree, however, as to which persons held the right of repurchase under the 1968 deed.  The Robinsons argue that the same persons held the right of repurchase under the 1968 deed as under the 1964 deed: Sydney Carpender or his heirs and assigns.  Osborn argues that Sydney Carpender and his "representatives", but not his "heirs and assigns", are the only persons holding the right of repurchase under the 1968 deed.

The dispute centers on the following language in the 1968 deed:

[T]he grantor hereby further partially releases the grantees from the provision that the grantor, his heirs or assigns or representatives may repurchase the property for a sum reduced by the cost of the improvements made by the grantees.  It is, therefore, the privilege of the grantor for himself and his representatives, to repurchase the described premises (if under the conditions of the [1964] deed, the named grantees or those so entitled decide to sell) for … $15,000.00 … without deductions.  All other rights and privileges vested in the grantor, his heirs, assigns or representatives, in the [1964] deed shall remain in the grantor, his heirs, assigns or representatives.

_____

[1]  For convenience, we will refer to this formula as "$15,000.00 less deductions".

Osborn contends that the phrase, "it is ... the privilege of *the grantor for himself and his representatives*, to repurchase the described premises," removes Sydney Carpender's heirs and assigns from the class of persons who hold the right of repurchase. The Robinsons respond that the entire passage merely changed the repurchase price from $15,000.00 less deductions to $15,000.00 in the event the Krackes wished to sell the Property during their lifetimes. In support of this premise, the Robinsons point to the parenthetical in the passage: "It is, therefore, the privilege of the grantor for himself and his representatives, to repurchase the described premises (if under the conditions of the [1964 deed], *the named grantees* or those so entitled *decide to sell*) for ... $15,000.00 ... without deductions." The Robinsons insist that there is no language that modifies the terms of transfer upon the death of the surviving Kracke spouse. Upon the death of the surviving Kracke spouse, the Robinsons claim, the final sentence of the passage controls: "All other rights and privileges vested in the grantor, *his heirs, assigns* or representatives, in the [1964 deed] shall remain in the grantor, *his heirs, assigns* or representatives."

Both Osborn's and the Robinsons' construction of the 1968 deed is reasonable. Under the language highlighted by Osborn, Sydney Carpender, the grantor, might have intended to limit the right of repurchase to himself and his representatives upon the death of the surviving Kracke spouse; under the language highlighted by the Robinsons, he might have intended

for the right of repurchase to include his heirs and assigns as well. Thus, the 1968 deed is ambiguous and requires consideration of parol or extrinsic evidence to interpret Sydney Carpender's intent as grantor. *Consol Pennsylvania Coal Co.*, *Doman*, *supra*.

In their final issue on appeal, the Robinsons assert that the trial court erred in granting judgment on the pleadings to Osborn on the ground that Sydney Carpender's will lacked language which specifically referenced any right to repurchase the Property. According to the Robinsons, although the will does not specifically devise the interest reserved in the 1964 will, the trial court overlooked that the will devised all rights to James Carpender that Sydney Carpender held with regard to the Johnson Farm, of which the Property is a part. Alternatively, the Robinsons continue, any real property rights held by Sydney Carpender passed to his heirs through the will's residuary clause.[2]

It is premature for this Court to decipher the meaning of the will. We have held above that the trial court erred by determining that the 1968 deed unambiguously precludes Sydney Carpender's heirs and assigns from repurchasing the Property after the death of the surviving Kracke spouse. Because the trial court misconstrued the deed, an error at the very center of

---

[2] *See Braman's Estate*, 258 A.2d 492, 494 (Pa.1969) (general residuary clause in will "carries every interest, known or unknown, immediate or remote, unless such interest is clearly excluded").

this dispute, our wisest course of action is to remand this case for further proceedings in which the parties have the opportunity to present parol or extrinsic evidence to explain the deed's meaning. Sydney Carpender's will is one piece of extrinsic evidence that the parties might elect to proffer for the purpose of explaining the meaning of the deed. The trial court should determine the admissibility of the will and all other evidence, and the factfinder should determine the weight to accord the evidence and the proper meaning of the 1968 deed.

Judgment vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2015