# Kaul *et al. versus* Lawrence *et al.*

1. Plaintiffs having given evidence of a treasurer's sale and of diligent and fruitless search for his deed, the record from the prothonotary's docket of the acknowledgment of the deed, was admissible to prove its contents.

2. Ejectment was brought by two for a whole tract of land; it appearing that one-twentieth was owned by another, an amendment adding his name was proper.

3. Amendments should not be allowed so as to deprive the opposite party of any right.

4. A party will not be allowed by amendment to shift or enlarge his ground by introducing an entirely new cause of action, especially when by reason of the Statute of Limitations, an injury would result to the opposite party.

5. In ejectment a name was added as plaintiff after suit brought; upon request, the court should charge, that if at the time of the amendment the title of the new party was barred by the Statute of Limitations he could not recover.

6. Payne, a surveyor, located a warrant on a wrong tract; the land as under the warrant was sold according to his location, improvements made, &c. He became owner of the tract *on* which he located the warrant; he sold. *Held,* that his successors in title were not estopped by his mistake from claiming the land.

7. Every owner is presumed to know the identity of his own land.

March 24th 1873.   Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ.   WILLIAMS, J., at Nisi Prius.

Error to the court of Common Pleas of *Elk county:* No. 23, to January Term 1872.

This was an ejectment for 500 acres of land, the east half of warrant No. 4883, in Benzinger township, Elk county, formerly Shippen township, McKean county; the action was commenced July 16th 1867, by John J. Lawrence and A. J. Cassatt, against John Kaul, Ignatius Garner and a large number of other defendants, several of whom afterwards disclaimed as to parts of the land.

On the 16th of January 1868, on motion of plaintiff's counsel, the record was amended " by adding the name of Alfred L. Tyler as plaintiff, he being a party in interest to the land in controversy and his name having been omitted."

No. 4883 had been warranted in the name of William Willink; the plaintiffs derived their title through Hiram Payne, who claimed through treasurer's sales.   The defendants claimed title through Benzinger and Eschbach, who had been the owners of No. 4886, an adjoining warrant in the name of Willink.   The allegation of defendants was that Payne, who was a surveyor, induced Benzinger and Eschbach to purchase No. 4886 and to allow him to run the lines and locate their warrant; that in doing so he located it on the eastern side of No. 4883, the land in dispute, and afterwards became the owner of this part, and that therefore he and those claiming under him, were estopped from claiming against Benzinger and Eschbach, or their successors in title.

[Kaul v. Lawrence.]

The cause was tried November 10th 1870, before Johnson, P. J., of the Sixth district.    It had been tried before, and the judgment reversed : Lawrence v. Luhr, 15 P. F. Smith 236.

The plaintiff gave in evidence assessment of No. 4883, and treasurer's sale August 1832, of 409½ acres ; and traced the title of 159¼ acres to Payne, September 1st 1848.

Also, assessment in McKean county of No. 4883, for 1840 and 1841 ; land sold for taxes June 13th 1842, to Nelson Richmond. Deed, Richmond to A. McCreery, September 4th 1846, reciting that the grantor claimed by deed from the treasurer of McKean county.    Deed, McCreery to Hiram Payne, January 3d 1848, No. 4883 for 143 acres, reciting the land to be same, sold by D. Crow, treasurer to N. Richmond in 1842.

The plaintiff then gave evidence by Brewster Freeman that he was the husband of N. Richmond's widow ; she was his administratrix ; witness had charge of the business ; he had made search amongst Richmond's papers for a treasurer's deed, dated June 13th 1842, for 143 acres of warrant No. 4883, and could not find such deed. McCreery, a former owner, died in 1868 ; witness went to his residence and had access to his papers ; he searched diligently and could not find the deed ; Crow, the treasurer, died about 1867. The plaintiffs gave evidence also by the deposition of Hiram Payne, of his unvailing search for the deed from Crow the treasurer to Richmond.

The plaintiff then offered in evidence the record from the prothonotary's office of the acknowledgment of deed in open court by David Crow, treasurer, on the 13th of July 1842, for 143 acres of No. 4883 to N. Richmond.    The offer was objected to by the defendants, admitted by the court and a bill of exceptions sealed. Plaintiff further gave in evidence : Assessment in Shippen township, No. 4883, 209 acres for 1844 and 1845, sold to Hiram Payne for taxes, and deed to him, dated September 24th 1846.

Deed, H. Payne to Newell Matson, dated June 17th 1852, for an undivided half of the east half of No. 4883, 511½ acres. Deed, April 17th 1853, same to same for the other undivided half of east half of No. 4883, 511½ acres.    Also, assessment and payment of taxes by Payne and Matson, respectively, from 1846 to 1858.    Treasurer's sale for taxes in the name of Payne, and deed July 14th 1860, to J. C. Chapin, and deed Chapin to Matson for same tract, November 19th 1860.    Deed July 18th 1865, Matson to J. J. Lawrence and A. J. Cassatt, plaintiff, for nineteen-twentieths of the same tract.    Deed, January 8th 1868, Matson to A. L. Tyler, plaintiff, for one-twentieth of the same tract.

Lawrence, one of the plaintiffs, testified that he bought of Newell Matson, of Milwaukee, nineteen-twentieths of three tracts of land, one being the east half of No. 4883, containing 511½ acres ; the deed was dated July 18th 1865 ; he paid Matson

$23,500 in cash, and afterwards paid him $2000 for the remaining one-twentieth bought by Tyler.

On cross-examination, he said he saw the land before he bought; saw the corners and some lines on all the warrants; there was something said about some settlers who were supposed to have located across the line on the land witness and his associates had purchased; he learned this after they purchased; it was said some settlers had cleared over a few acres by mistake.

The defendants gave evidence that warrant No. 4883 was bounded north by No. 4882, south by No. 4886, and east by the district line. On the 22d of February 1845, Benzinger and Eschbach, who resided in Baltimore, purchased No. 4886 and other Willink warrants from Thomas P. Stryker, they being ignorant of the location. Benzinger testified that, being in St. Mary's, Elk county, in 1845, Hiram Payne called on him and said that he (Payne) had been agent for the Stryker lands, was a surveyor, and desired to do Benzinger and Eschbach's surveying; said he would locate the lands. Payne commenced work in June, and three or four days afterwards told witness that he had found the "maple corner," and he would have no difficulty in locating the lands. Witness acted on Payne's location: roads were laid on No. 4886, with the other warrants, and divided into farm lots, and sold, according to Payne's location. In September 1846, Payne and Benzinger and Eschbach were at the "maple corner;" he said, "This is the bugbear in the way of the Sunbury and Erie railroad; he had bought lands in that vicinity which we ought to have;" they were located north of those he had located for Benzinger and Eschbach; No. 4883 was one of the numbers; they never owned or pretended to own No. 4883; Payne used his own papers and maps.

Eschbach testified that he relied entirely on the ability of Payne, who professed to be fully acquainted with the corners, courses, &c.

Hiram Payne, by his deposition, testified that he had first called Benzinger's attention to the Stryker lands, including No. 4886. After Benzinger's purchase witness surveyed for him; no part of No. 4886 or No. 4883 was then improved; it was an unbroken wilderness; in the opinion of witness, "then and now," his location of No. 4886 was correct; there were then no subdivision lines or improvements; witness had no hand in making the final contract with Benzinger; witness gave no encouragement to Benzinger to purchase the land; he did not know what land the defendants occupied.

Defendants gave evidence that Benzinger and Eschbach located lots and farms on No. 4883, supposing from Payne's location that they were on No. 4886.

Also evidence that the portions of the land claimed by the defendants had been purchased by them and their predecessors

[Kaul *v.* Lawrence.]

from 1849 to 1860, and had been improved; also that Payne had been on the property and along the line in 1845, when there were some settlements of the Benzinger and Eschbach lands; that at that time Payne went out to show his own land.

There was evidence that there were settlers on the land as early as 1845.

Newell Matson (by deposition) testified that he purchased half of the east half of No. 4883 from Payne April 17th 1853, and afterwards purchased from him the other half; witness "quit-claimed" to John J. Lawrence and others in the spring of 1865; he was on what he supposed to be the lands; they were shown him by Payne; witness could not state the position of the lands with reference to roads, streams and settlers.

The facts in the case will be found fully set out in Lawrence *v.* Luhr, *supra.*

The plaintiff submitted these points, which were affirmed :—

1. The facts given in evidence in this case do not raise the question of an estoppel, and the doctrine of an equitable estoppel does not apply to the plaintiffs so as to prevent a recovery by them of all the premises described in the writ except that portion for which disclaimers are filed.

2. Under all the evidence the plaintiffs are entitled to recover all the lands claimed in the writ, which are not disclaimed.

The defendant's first three points, which were denied, were :—

1. If the jury believe that Hiram Payne was a surveyor by profession, and by his assurance of professional skill, and that he possessed important information for the work, secured from Benzinger and Eschbach the job of locating their lands, and their implicit confidence in his ability to do it properly; that he did locate warrant No. 4886, on the land occupied by the defendants, that he ran roads through it, and ran off lots for settlers upon it, that Benzinger and Eschbach relied upon his location, made sales of lots according thereto, to actual settlers, and entangled themselves by conveyances thereof, with covenants of warranty; that Payne purchased the east half of 4883 in 1846, believing it to be located north of the land now sued for, continued the owner thereof until 1853, claiming all the time that his land 4883 was north, that during all this time the defendants and those under whom they claim, were buying, settling upon and improving this land with Payne's knowledge, they knowing also that Payne claimed the land north and not this; then Hiram Payne would be estopped from asserting his title against the defendants.

2. If the jury believe in addition to the facts stated in the first point, that Newell Matson bought of Hiram Payne after a personal inspection and examination of the lot north of the land in controversy, and in view of its advantages; that in the contemplation of both Payne and Matson it was the said lot north of this which

[Kaul *v.* Lawrence.]

passed at the sale; that at the time of Matson's purchase, the defendants were living upon the land and Matson knew of their improvements, then Matson is in no better position than Payne, and could not recover against the defendants.

3. The possession of defendants at the time of the purchase by Matson from Payne, and at the time of the purchase by the plaintiffs from Matson, was notice of their equities against Payne.

Their 4th point was :—

4. The amendment of the record by the addition of A. L. Tyler as a party plaintiff, cannot avail the plaintiffs so as to enable them to recover in this action the one-twentieth owned by him; the said Tyler's ownership being distinct and supported by additional evidence; the said amendment not affecting the merits of the suit so far as concerned the original plaintiffs, and the omission so to amend not affecting Tyler's rights in any suit he might bring.

To this the court answered :—

" We think the defendants' fourth point not tenable. The court has at a previous time passed and we think properly upon the plaintiffs' right to amend. If they erred in that, exception can be taken to it, upon a writ of error."

The court further charged : * * *

" The plaintiffs here being equally innocent with the defendants in producing the collision between them, having by no word or act induced or encouraged the defendants settling on or improving their land, should not be visited with the consequences of Payne's blunder of which they had no knowledge. The claim of the title to the land they purchased had no broken link or flaw in it, perceptible to the eye by the closest scrutiny. It has therefore been ruled that under the facts in this case the doctrine of estoppel does not apply to the plaintiffs." * * *

The verdict was for the plaintiffs.

The defendants took out a writ of error and assigned for error:

1. Admitting the record of the acknowledgment of the treasurer's deed.

2. Allowing the amendment to the record by adding Tyler's name as plaintiff.

3, 4. The answers to the plaintiffs' points.

5–8. The answers to the defendants' points.

*J. G. Hall*, for plaintiffs in error.—If there was no delivery of the deed from David Crow, treasurer, to N. Richmond, he acquired no title to the land: Donnel *v.* Bellas, 10 Barr 341 ; Donnel *v.* Bellas, 1 Jones 341 ; Gault's Appeal, 9 Casey 99 ; Hoffman *v.* Bell, 11 P. F. Smith 444. To supply its place by secondary evidence of its contents, it was necessary to prove the deed had been delivered: McCredy *v.* The Schuylkill Nav. Co., 3 Whart. 424; Jack *v.* Woods, 5 Casey 375. A recital in a deed is not

evidence against a stranger: Morris v. Vanderen, 1 Dallas 65; Dean v. Connelly, 6 Barr 239; Meals v. Brandon, 4 Harris 225. At the date of the amendment, the Statute of Limitations had vested some of the defendants with a complete defence as against Tyler. Whenever the rights of a party are liable to be defeated by having joined too few or too many plaintiffs or defendants, these amendments may be made. The amendment was not necessary to the recovery of Lawrence and Cassatt. They recover neither more nor less than if Tyler had not been joined.

An amendment will not be allowed which introduces a new cause of action: Gardner v. Post, 7 Wright 19. Especially one which introduces a cause of action barred by the Statute of Limitations: Wright v. Harts, 8 Wright 454; Stout v. Stout's Administrator, Id. 457.

Where a loss must fall upon one of two innocent persons, it shall be borne by him whose act occasioned it: Robinson v. Justice, 2 Penna. R. 19; Maple v. Kussart, 3 P. F. Smith 352; Millingar v. Sorg, 5 Id. 225. Where one encourages another to settle upon land, improve it, &c., he will not be permitted to take it, though he has an older and better title to it: McKelvey v. Truby, 4 W. & S. 323. Where an act is done or a statement made by a party, the truth or efficacy of which it would be a fraud on his part to controvert or impair, the character of an estoppel shall be given to what would otherwise be mere matter of evidence: Stephens v. Baird, 9 Cowen 274; Derry v. Field, 5 Metc. 381; Congregation v. Williams, 9 Wend. 147; Com'th v. Moltz, 10 Barr 530; Ludlam's Estate, 1 Harris 192; Patterson v. Lytle, 1 Jones 53; Beaupland v. McKeen, 4 Casey 131. The only one whom the law protects against a trust or equity existing against the grantor is an innocent purchaser for a valuable consideration without notice. And he must show that he has paid the purchase-money: Bellas v. McCarty, 10 Watts 29; Rogers v. Hall, 4 Id. 362; Lewis v. Bradford, 10 Id. 82; Union Canal v. Young, 1 Whart. 431; Bolton v. Johns, 5 Barr 145. A purchaser is liable not only for all that he actually discovers, but for all that, with due diligence, he might have discovered: Jacques v. Weeks, 7 Watts 272; Hood v. Fahnestock, 1 Barr 474; Kerr v. Day, 2 Harris 112; Wright v. Wood, 11 Id. 121.

*H. Souther* and *R. Brown*, for defendants in error.—As to the admission of the record of the acknowledgment of the deed of Crow, treasurer: cited, Reinboth v. Zerbe Run Improvement Co., 5 Casey 139. The case is not varied from Lawrence v. Luhr, 15 P. F. Smith 236.

The opinion of the court was delivered, May 17th 1873, by
AGNEW, J.—After having given evidence of a treasurer's sale

and laid the usual ground by proof of a diligent and fruitless search for the treasurer's deed, the plaintiffs offered the record in the prothonotary's docket, of the acknowledgment of the deed, to prove its existence and contents. To this the defendants excepted, but we think without sufficient reason. This is the usual and proper mode of proving the existence of the deed, and identity of the land sold and conveyed by the treasurer. The case has been argued in this court, on the question of the delivery of the deed, but this was a fact to be submitted to the jury. The defendants made no point on the delivery. Doubtless the court would have submitted this question with proper instructions, had a request been made. There was evidence of a strongly presumptive kind to go to the jury. The sale was made and acknowledgment of the deed entered of record in 1842, a period of thirty years before the trial. A claim of title has since been made under the sale, and sales and conveyances made accordingly. These facts, together with the Act of 13th March 1817, requiring the purchasers at treasurer's sale, so soon as the property is struck down, to pay the purchase-money, or so much thereof as shall be necessary to pay the taxes and costs, and also one dollar, the fee of the prothonotary for entering the acknowledgment of the deed, in connection with the fact that the acknowledgment was so entered, were ample evidence from which the jury might have inferred a delivery of the deed. We discover no error in this bill of exception. Nor do we think the court erred in permitting the name of Alfred L. Tyler to be added as a plaintiff, and part owner of the land. The plaintiffs brought their ejectment for the whole tract of 500 acres, as an entirety. They did not claim an undivided interest. On discovering that the title to one undivided twentieth was in Tyler, the motion to amend was made on the ground of an omission of his name. The legislature has gone far to prevent the loss of a trial and delay, by allowing amendments, even to the form of action, and the courts have seconded the effort to reach the merits of the cases and prevent a failure of justice through technicalities: Trego *v.* Lewis, 8 P. F. Smith 46; Heidelberg School District *v.* Hunt, 12 P. F. Smith 307; Election Cases, 15 P. F. Smith 35; Leonard and Wife *v.* Parker *et al.*, 22 P. F. Smith 236. In doing this, it is our duty, however, to see that amendments are not made in a manner to deprive the opposite party of any valuable right. As remarked in Trego *v.* Lewis, *supra*, the court will not permit a party to shift his ground or enlarge its surface, by introducing an entirely new and different cause of action, especially when, by reason of the Statute of Limitations, or an award of arbitrators, or from other good reason, it would work an injury to the opposite party. It is claimed in this case, that at the time Tyler's name was added to the record, his title was barred by the Statute of Limitations. But it is very evi-

[Kaul v. Lawrence.]

dent that when it concerns title to real estate, a defence under the Statute of Limitations must necessarily go to the jury. Such a defence is affected by such a variety of circumstances, as to the extent and nature of the possession, condition of the parties, length of time, &c., it must be left to the jury on all the facts. It is the right of the parties to have proper instructions to the jury, and the defendants in this case might have asked the court to say, that if Tyler's title was barred by the statutes when his name was added, there could be no recovery in the action of his proportion of the land. Substantially, all these questions were determined in Leonard and Wife v. Parker et al., supra. It was right, therefore, to allow the amendment, leaving the defendants to their prayer for proper instructions, according to the nature of the case, as developed in the evidence.

In regard to the question of estoppel, we think the state of the case is not different from that which was presented when it was here before, and is governed by the opinion then delivered. See Lawrence v. Luhr, 15 P. F. Smith 236. The mistake of Payne, as a surveyor, in locating tract No. 4886 on tract No. 4883, was an innocent act. This is evident from the testimony, and also from the fact that when he bought 4883 afterwards, he located it north of its true location, and adjoining No. 4886. He also sold 4883, according to this mistaken location, to Matson, a non-resident, and, like himself, ignorant of the mistake. In buying 4883, there was no want of good faith to the owners of 4886, either on Payne's part or Matson's. It was long after Matson bought 4883 from Payne before he, or his vendees, became aware of the fact that the true location of 4883 was that occupied by the owners of 4886. It was impossible, therefore, when Matson bought 4883, that he could make inquiries of the occupants of the tract, supposed to be 4886, to know by what title they held the land they were thus occupying. It was then unknown that there was a conflict of title. The same mistake which misled the vendors of the defendants, misled Matson, and he was equally innocent with them. Each claimed a different tract, as known by the original number, and held by a different title. The common presumption applicable to every owner that he knows the identity of his own land, applied equally to each, and yet each was innocently mistaken, and neither was the cause of the mistake in the other.

If he was bound to know the location of 4883 on the ground, so were they to know where 4886 lay. If they were misled by Payne, he was likewise. Payne, though the innocent cause of the mistake, might be estopped when he became the owner of No. 4883, from claiming it from those whom his mistake had injured; on the principle, that as between innocent persons, one of whom must suffer a loss, he shall bear it who was the cause of it. Matson, however, is not only an innocent party, but was not instru-

23 P. F. Smith—27

[Kaul *v.* Lawrence.]

mental in causing the loss, and was incapable of avoiding the position he fell into, by any inquiry he could be led to make. The subsequent discovery of the error of location not only shifts them, but also shifts him. He has the title to 4886; they have not; both are equally innocent, and therefore he must prevail. The argument so strongly pressed upon us, and the authority cited upon the notice which actual possession furnishes, and the duty to follow up the challenge it gives, fails in this case, owing to its peculiar circumstances.

Judgment affirmed.