UNITED STATES of America, Appellee,

v.

Howard B. CHATHAM and his wife, Mrs. Howard B. Chatham, Appellants.

No. 8469.

United States Court of Appeals Fourth Circuit.

Argued Jan. 10, 1962.

Decided Feb. 1, 1962.

**500**

C. E. Hyde, Murphy, N. C., for appellants.

William Medford, U. S. Atty., Waynesville, N. C., for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

Summary judgment was entered for the United States, condemnor of mountain lands in Western North Carolina, against claimants to the land under a parallel title. The District Court based its action upon the fact that Macon County, a party to the condemnation proceedings for the purpose of setting up any claim it had for the payment of previously assessed ad valorem taxes, subsequently acquired the parallel title in tax foreclosure proceedings and then conveyed the land to the present claimants. We think the fact that the defendants' grantor was Macon County did not warrant the entry of summary judgment against them.

For incorporation in its Nantahala National Forest, the United States, in 1935, undertook the condemnation of almost three thousand acres of mountainous lands in Cherokee, Jackson and Macon Counties, North Carolina. Among these lands, was a tract designated on the records of the Forest Service of the Department of Agriculture as R. Y. McAden Tract No. 238–I. In the complaint in this condemnation proceeding, Tract No. 238–I was said to contain 80.8 acres and

to have been owned by the R. Y. McAden Estate. The McAden heirs answered, admitting their ownership of Tract No. 238–I.

An order of condemnation was filed in 1936. Later there was an order of distribution of the money paid as just compensation for Tract No. 238–I. Specific sums were directed to be paid to two lienholders, not including Macon County, and the remaining balance was directed to be paid to the McAden heirs.

In the Southern Appalachians, it is not uncommon to find overlaps among original grants of mountainous lands. Partial duplications were not always readily apparent in the surveys, submitted by prospective grantees, upon which the original grants were based. Since possession of the more rugged and precipitous lands was usually quite nominal, except upon occasions of timber harvests, it frequently happened that separate, parallel chains of title, each duly recorded, stemmed from overlapping original grants. Such a situation underlies this controversy.

By a deed dated in 1905, one William P. Head acquired record title to a tract of land, said to contain 128½ acres. A modern survey disclosed an overlap of 70 acres between this Head tract of 128½ acres and the McAden Tract No. 238–I of 80.8 acres. Apparently the Head and McAden titles were derived from different original grants which were duplicating to the extent of the 70-acre overlap. The defendants, here, tacitly concede that the original grant from which the record title of the McAdens was derived was the earlier of the two, but they filed an affidavit of a grandson of William P. Head containing statements which, if true, would support a conclusion that, at the time of condemnation, the Heads, rather than the McAdens, were the lawful owners of the 70 acres in the overlap.[1]

---

1. The affiant stated he was born in 1907 in his grandfather's home on the 128½-acre tract. His grandfather lived there until his death and the widow and grandchildren continued to live there until

1934, when they leased the lands. Their tenant, he said, was living on the place when the United States condemned 70 acres of it as lands belonging to McAdens. The defendants claim that the

None of the Heads, who claim to have been the lawful owners of the 70 acres in dispute, were parties to the condemnation proceedings.

The tract of 128½ acres was listed for taxation in Macon County in the name of the Heads. However, they failed to pay their taxes for 1928 and subsequent years. In 1942 Macon County filed an action against the Heads for the recovery of these unpaid taxes. It obtained a judgment, and the land was sold to satisfy the judgment.[2] Macon County was the purchaser at the sale.

In 1956, Macon County, by a quitclaim deed, conveyed the 128½-acre tract to the defendants. Thereafter, the defendants entered the land and cut the timber, including that on the 70 acres in dispute.

In 1960, officials of the Forest Service having discovered what the defendants had done, the United States brought this action seeking a decree which would (1) quiet its title to the lands it claims, (2) enjoin the defendants from further trespasses, and (3) require the defendants to pay the value of the timber they had removed.

In granting summary judgment for the United States, the District Court did not consider whether the condemnation proceedings were effective to vest in the United States title to the disputed lands good against the Heads. It held that, because Macon County was at least a technical party to the condemnation proceedings, it was estopped to claim the lands adversely to the United States. It concluded that Macon County's grantees acquired no greater right than their grantor could enforce.

In that conclusion, we think the District Court carried the doctrine of estoppel too far.

In the first place, if, as it assumed may have been the case, the Heads were the lawful owners of the 70 acres after the condemnation proceedings and could have excluded the United States from them, no reason appears why Macon County could not have assessed its taxes upon this privately owned real estate as it does all other real estate, privately owned, within its borders. If it could assess its taxes, it could collect them and resort to the regular and prescribed remedies for the purpose. If the United States acquired no interest in the land by its condemnation proceeding, it acquired no right to defeat Macon County's scheme of taxation or her enforcement of her tax claims by acquisition of the interest in the land of the lawful owners.

■ More importantly, however, application of the doctrine of estoppel does not extinguish the asserted right. The doctrine presupposes existence of the right, but denies it judicial enforcement because the circumstances make judicial enforcement inequitable. This is particularly true in real estate matters, where the policy of the recording acts prevents the assertion of an equitable defense, good against a predecessor in title, if the successor in title had no actual or constructive notice of the facts constituting the basis of the defense. If it be thought inequitable to permit Macon County to assert a title adverse to the United States, it could only be because Macon County was made a party to the condemnation proceedings for the purpose of setting up any tax claim it might have. That consideration is inapplicable to Macon County's grantees, these defendants. They were not parties to the condemnation proceedings. There is nothing to show they had any notice of those proceedings. It does not appear they had any reason to suspect that the United States had purported to condemn these 70 acres as part of the lands of the McAdens. However carefully they checked the title of

---

Heads were in actual, open and exclusive possession of all of the 128½-acre tract, continuously from 1905 until sometime after these condemnation proceedings. Such possession, if it existed, under color of their record title, would have perfected the title of the Heads as against the McAdens.

2. Macon County's tax judgment was for the unpaid taxes for the years 1928 through 1942. The condemnation was in 1936.

their grantor in the public records, their search would not disclose the claim of the United States, for the Heads were not parties to the condemnation proceedings. The records of the condemnation proceedings, if they had examined them, would have shown that Macon County claimed no interest in these lands in the condemnation proceeding, and it was not alleged that it ever had claimed any interest in them except that of a taxing sovereign. An examination of those records would disclose no basis for suspecting the overlap between the McAden and Head lands.

The basis of a possible estoppel against Macon County is not present here where the claim is asserted by these defendants. From what now appears, there was nothing in the public records or in the nature of the possession of the United States to give these defendants notice that the United States claimed an interest in the land. If their predecessors in title, the Heads, were the lawful owners of the land after the condemnation proceedings, nothing now appears which would make it inequitable that these defendants should enforce the rights which they acquired, through Macon County, from the Heads.

This situation is not comparable to that in which one subsequently acquires a title he earlier had undertaken to convey by warranty deed. Macon County did not purport to convey anything to the United States. It made no representation in the condemnation proceeding except that it had no claim for taxes accrued, prior to condemnation. If it be held to that representation, the equitableness of enforcement by these defendants of rights derived from the Heads is unaffected.

■ We conclude, therefore, that no estoppel preventing enforcement of the rights of these defendants arose from the fact that, some years after the condemnation, Macon County acquired the interest of the Heads in the land and thereafter conveyed that interest to these defendants.

We do not consider any of the questions which will be presented in the course of further proceedings, particularly whether the Heads' title was good against the McAdens, and, if so, whether they retained their interest in the land, rather than a right to compensation, after the condemnation proceedings to which they were not parties. Nor do we suggest, of course, that other facts may not be established which, on equitable principles, may be disabling to the defense.

Since we conclude that summary judgment for the United States was unwarranted, the judgment will be reversed and the cause remanded for further proceedings.

Reversed and remanded.