**RIVERWATCH CONDOMINIUM OWNERS ASSOCIATION,**
Appellant

v.

**RESTORATION DEVELOPMENT CORPORATION, County of Delaware, Recorder of Deeds, and County of Delaware, Board of Assessment.**

Commonwealth Court of Pennsylvania.

Argued Nov. 11, 2008.

Filed May 29, 2009.

Publication Ordered Aug. 20, 2009.

Robert C. Ewing, Media, for appellant.

Blair H. Granger, Paoli, for appellee, Restoration Development Corporation.

BEFORE: COHN JUBELIRER, Judge, BUTLER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Riverwatch Condominium Owners Association (Association) appeals the order of

the Court of Common Pleas of Delaware County (trial court) granting the summary judgment motion of Restoration Development Corporation (Restoration), affirming Restoration's title to a disputed two-acre parcel of property, and Restoration's right of access to that two-acre parcel across a portion of the Association's property. We affirm.

By deed dated May 4, 1988, Genevieve Caldwell, Executrix of the Estate of Daniel Henuber conveyed a 3.1593–acre parcel of property bordering the Delaware River in Tinicum Township, Delaware County to Riverfront, Inc. (Riverfront). The parcel was purchased for $400,000.00, and the deed was recorded on May 6, 1988 with the Delaware County Office of the Recorder (Recorder) at Volume 570, Page 985. Reproduced Record (RR) at 102–105. The entire parcel was identified as Folio Number 45–00–01775–00 for the payment of property taxes due thereon to the County of Delaware Board of Assessment (Board). *Id.* at 102.

On March 6, 1991, a Site Plan for condominium development of the parcel was recorded with the Recorder at Plan Book 17, Page 80. Reproduced Record (RR) at 160. The Site Plan shows the construction of 34 units on a 1.089–acre parcel (one-acre parcel) of the property designated as "Phase I" (Riverwatch I). *Id.* The Site Plan shows an adjoining 2.0703–acre parcel (two-acre parcel) for use as a parking lot and boat slips designated as "Phase II" (Riverwatch II). *Id.* In addition, the Site Plan shows driveway access to the parking lot on the Riverwatch II two-acre parcel from Carre Avenue across a portion of the Southwest corner of the Riverwatch I one-acre parcel. *Id.*[1]

On September 12, 1995, Riverfront filed a Declaration of Condominium (Declaration) with the Recorder at Volume 1398, Page 1178. RR at 114–159. The Declaration was signed by Anthony Grosso as president of Riverfront. Id. at 158. Sections 1.1, 1.2 and 1.3 of the Declaration state the following:

Section 1.1 *Declaration of Condominium.* [Riverfront] is the owner in fee simple of the property described as **Exhibit "A"**, which is attached hereto and made part hereof which property is located in the Township of Tinicum, Delaware County, Pennsylvania (the **"Property"**). [Riverfront] hereby submits Phase I of the Property to the provisions of the Pennsylvania Uniform Condominium Act [ (PUCA)[2],] thereby creating a condominium, which is to be known as RIVERWATCH CONDOMINIUM ( [Riverwatch I] ). [Riverwatch I] will be developed in two Phases on a portion of a larger property. A legal description of both Phases is attached hereto, made a part hereof and marked as **Exhibits "B" and "C"**. The balance of the larger tract shall initially be organized as a separate condominium known as Riverwatch II Condominium. This property is described in **Exhibit "D"** and is flexible real estate[3] (the

---

1. On August 1, 1995, a new "Site Plan of Condominium of Riverwatch" was created showing the 34–unit development of the one-acre parcel as shown in the recorded Site Plan. RR at 162. The new Site Plan designated the two-acre parcel as "Future Development Riverwatch II Condominium". *Id.* This Site Plan also moved the boundary line separating the Riverwatch I one-acre parcel and the Riverwatch II two-acre parcel to include the access to the parking lot on the two-acre

parcel from Carre Avenue so that it was fully included within the boundary of the Riverwatch II two-acre parcel. *Id.* However, this new Site Plan was never recorded with the Recorder.

2. 68 Pa.C.S. §§ 3101–3414.

3. Section 3103 of the PUCA defines "flexible condominium" as "[a] condominium containing withdrawable or convertible real estate, a

"Flexible Real Estate") which may be added to the Condominium under certain conditions set forth herein. Each phase [of the development of Riverwatch I], as well as the flexible real estate is identified on the Plats and Plans which are attached hereto, made a part hereof and marked **Exhibit "E"** (the **"Plats and Plans"**). Phase II [of Riverwatch I] is Convertible Real Estate as that term is defined in the [PUCA[4]], and are marked **"Convertible Real Estate"** on the Plats and Plans.

Section 1.2 *Size and Location.* The Property consists of a total area of approximately, 1.080 acres more or less, as shown on the Plats and Plans....

Section 1.3 *Number of Phases, Buildings and Units in Each Phase.* The Condominium will contain 34 Units. Phase I [of Riverwatch I] consists of fourteen (14) Units in one (1) Building. Phase II [of Riverwatch I] will consist of one (1) Building containing twenty (20) additional Units....

*Id.* at 114.

In turn, Exhibit A of the Declaration contains a metes and bounds description of the Riverwatch I one-acre parcel which is bordered on the Southern side "at the edge of property now or formerly of Riverwatch II Condominium; thence by Riverwatch II Condominium the five following courses and distances...." RR at 115. Exhibit A also states that Riverwatch I is comprised of a parcel "**CONTAINING** 1.089 Acres of land more or less." *Id.*[5]

In addition, Exhibit D of the Declaration contains a metes and bounds description of parcel identified as Riverwatch II in the Declaration which was also designated as a separate condominium in the Declaration. RR at 118. Exhibit D also states that Riverwatch II two-acre parcel is comprised of a parcel "**CONTAINING** 2.0703 acres of land, more or less." *Id.*

---

condominium to which additional real estate may be added, or a combination thereof." 68 Pa.C.S. § 3103.

**4.** Section 3103 of the PUCA defines "convertible real estate" as "[a] portion of a flexible condominium not within a building containing a unit, within which additional units or limited common elements, or both, may be created." 68 Pa.C.S. § 3103.

**5.** As noted above, the Riverwatch I one-acre parcel was to be developed in two phases, on the parcels described in Exhibit B by metes and bounds and "**CONTAINING** 0.5597 acres of land more or less ...", and described in Exhibit C by metes and bounds and "**CONTAINING** 0.5293 acres of land more or less...." RR at 116, 117. With respect to the rights reserved by the Declarant regarding these two phases of the development of the Riverwatch I one-acre parcel, Sections 15.2, 15.7, and 15.9 provide:

Section 15.2 *Reservation of Right to Add Additional Real Estate.* Pursuant to Section 3201 of the Act, the Declarant hereby reserves the right to add additional real estate as described in Exhibit "C" to the Condominium. This real estate may only be added if it is undeveloped land and if the addition occurs within seven (7) years of the recording of this Declaration....

\* \* \*

Section 15.7 *Legal Descriptions of Convertible Real Estate.* Legal descriptions of Phases II of the Convertible Real Estate are attached hereto, made a part hereof and marked Exhibit "B". The Flexible Real Estate is described in Exhibit "C". Phase II is designated as Flexible Real Estate. In the event Declarant does not build the Building in the area designated Convertible Real Estate onland shall remain part of the Common Elements described in Section 4.1 hereof....

\* \* \*

Section 15.9 *Maximum Units in Convertible Real Estate.* The maximum number of Buildings and Units in each Phase will be as follows:

| PHASE | BUILDINGS | TOTAL UNITS |
|-------|-----------|-------------|
| I | 1 | 14 |
| II | 1 | 20 |

*Id.* at 155.

Moreover, Section 7.1(b) states that, in addition to the easements specifically granted by the PUCA, "[t]he Condominium shall be subject to ... [e]asements for driveways through the Condominium as shown on the Plats and Plans...." RR at 134. Further, Section 7.1(n) states that "[a]ll easements, rights and restrictions described and mentioned in this Declaration are easements appurtenant, running with the land and the improvements thereon...." *Id.* at 137.

On October 11, 1995, another Site Plan for the first phase of the development of the Riverwatch I one-acre parcel was recorded with the Recorder at Plan Book 18, Page 439. RR at 161. This Site Plan again shows the construction of a total of 34 units on the Riverwatch I one-acre parcel of the property. *Id.* The Site Plan again shows the adjoining Riverwatch II two-acre parcel for use as parking and boat slips. *Id.* In addition, the Site Plan again shows driveway access to the parking lot on the Riverwatch II two-acre parcel from Carre Avenue across a portion of the Southwest corner of the Riverwatch I one-acre parcel. *Id.*

By a deed dated December 17, 1997, Riverfront conveyed the Riverwatch II two-acre parcel of the property to Riverfront Marina, Inc. for the sum of $75,000.00. RR at 106–109.[6] The deed was recorded with the Recorder on February 5, 1998 at Volume 1678, Page 346. *Id.* The Board assigned a tax folio number for the Riverwatch II two-acre parcel separate from the tax folio number for the Riverwatch I one-acre parcel when the deed for the two-acre parcel was recorded. *Id.* at 13.

By deed dated November 4, 1999, Riverfront Marina conveyed the Riverwatch II two-acre parcel to Restoration for the sum of $65,000.00. *Id.* at 110–113. This deed was recorded with the Recorder on November 10, 1999 at Volume 1949, Page 2131. *Id.*

On April 15, 2005, the Association filed an amended complaint in the trial court against Restoration, the Recorder and the Board. RR at 7–14. In Count One of the complaint, the Association instituted an action quiet title against Restoration in which it asked the trial court to declare that it is the true and lawful owner of the Riverwatch II two-acre parcel. *Id.* at 8–10. In Count Two, the Association instituted an action in ejectment against Restoration in which it asked the trial court to prevent Restoration's continuing trespass on the Riverwatch II two-acre parcel. *Id.* at 11. In Count Three, the Association instituted an action to quiet title against Restoration in which it asked the trial court to declare that Restoration has no interest across the Southwest corner of the Riverwatch I one-acre parcel to gain access to the Riverwatch II two-acre parcel. *Id.* at 11–12. In Count Four, the Association instituted an action in mandamus against the Recorder in which it asked the trial court to compel the Recorder to rescind the deed of record which purports to convey ownership of the Riverwatch II two-acre parcel to Restoration. *Id.* at 12. Finally, in Count Five, the Association instituted an action in mandamus against the Board in which it asked the trial court to compel the Board to eliminate the separate tax folio number that it issued for the Riverwatch II two-acre parcel. *Id.* at 13.

6. Specifically, the deed describes the parcel, in pertinent part, as "[a]ll that certain tract or parcel of land situate in the Township of Tinicum ... being 'Riverwatch II Condominium' as shown on that certain 'Site Plan of Condominium of "Riverwatch" for Riverfront, Inc.' ... dated August 1, 1996 ...'", and then it is more specifically described in metes and bounds. RR at 106.

On October 27, 2005, Restoration filed an answer, new matter and counterclaim to the complaint. *Id.* at 15–31.

On September 6, 2006, Restoration filed a motion for summary judgment, and the Association filed a reply to the motion. On October 12, 2006, the trial court issued an order granting the motion for summary judgment, affirming Restoration's title to the Riverwatch II two-acre parcel, and affirming Restoration's access to that parcel from Carre Avenue across the Southwest corner of the Riverwatch I one-acre parcel. Ultimately, the Association filed an appeal to this Court of the trial court's order denying the Association's motion for reconsideration of its order of October 12, 2006 granting summary judgment.

On appeal, this Court noted that, in the amended complaint, the Association had instituted both actions to quiet title and in ejectment against Restoration, and that the material issue of fact of who was in possession of the Riverwatch II two-acre parcel was in dispute. *See Riverwatch Condominium Owners Association v. Restoration Development Corporation*, 931 A.2d 133, 138–139 (Pa.Cmwlth.2007). Relying upon the Pennsylvania Supreme Court's opinion in *Siskos v. Britz*, 567 Pa. 689, 790 A.2d 1000 (2000), this Court determined:

> [I]t is clear that the trial court erred in granting Restoration's motion for summary judgment, and denying the Association's motion for summary judgment where ... the fact of the possession of

the relevant parcel of property is in dispute. Moreover, and more importantly, in such a situation, the trial court is required to make the initial determination of which party is in possession of the property because "[a] determination of possession is a jurisdictional prerequisite to a ruling on the merits pursuant to either [Rule 1061](b)(1) or (b)(2) [of the Pennsylvania Rules of Civil Procedure]." [*Siskos*, 567 Pa.] at 701, 790 A.2d at 1008. Thus, the trial court's order in the case *sub judice* must be vacated, and the matter must be remanded to the trial court to proceed in accordance with the dictates of the Pennsylvania Supreme Court as set forth in *Siskos.*

*Riverwatch Condominium Owners Association*, 931 A.2d at 141. Accordingly, this Court issued an order vacating the trial court's order and remanding the matter to that court for further proceedings. *Id.*

On January 11, 2008, the Association and Restoration entered into a Stipulation in which it was agreed that "[b]oth at the time this matter was commenced by [the Association] and presently, [Restoration was] in possession of the disputed Two-Acre Parcel of land...." RR at 33. In addition, the parties agreed that "[the Association]'s Count I for Quiet Title is hereby withdrawn and the dispute regarding title to the Two Acre Parcel will proceed under ... Restoration's Counterclaim for Quiet Title pursuant to Pa.R.Civ.P. 1061(b)(1), confirming [the Association]'s Count II Action in Ejectment." *Id.*[7]

---

**7.** As the Pennsylvania Supreme Court noted in *Siskos*:

> [E]jectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession. Pursuant to Rule 1061(b)(1), "[a] possessor of land is entitled to bring an action against one who, although not in possession, has some claim of interest in the land, compelling that person

to assert his or her interest by bringing an action in ejectment, or be forever barred from attacking the title of the possessor."
... "The purpose of an ejectment action as opposed to quiet title is not to determine the relative and respective rights of all potential title holders, but rather the immediate rights between plaintiff and defendant involved in that particular litigation."

On March 27, 2008, Restoration filed a motion for summary judgment, and a memorandum of law in support thereof. On April 14, 2008, the Association filed an answer to Restoration's motion, a counter motion for partial summary judgment, and a brief in support thereof as well.

On May 9, 2008, the trial court issued the instant order granting Restoration's motion for summary judgment, affirming Restoration's title to the disputed Riverwatch II two-acre parcel of property, and affirming Restoration's right of access to that parcel across the Southwest corner of the Riverwatch I one-acre parcel.[8] The Association then filed the instant notice of appeal from the trial court's order.[9]

In this appeal, the Association claims that the trial court erred in granting Restoration's motion for summary judgment because: (1) Restoration was never conveyed valid title to the Riverwatch II two-acre parcel; (2) the disputed Riverwatch II two-acre parcel was conveyed to the Association based upon a number of the Declarant's acts and omissions; and (3) the court erred in granting Restoration a right of access to the Riverwatch II two-acre

*Siskos*, 567 Pa. at 699, 790 A.2d at 1008 (citations omitted).

8. In the opinion filed in support of its order, the trial court stated the following, in pertinent part:

[T]he primary issue presented is whether the two acre parcel is a separately owned parcel over which condominium owners have no rights or whether that parcel is part of the common area of the condominium. [The Association] contends that the two acre parcel had previously been conveyed by operation of law to [the Association] by means of the Declaration of Condominium. However, the Declaration indicates that the declarant is the owner in fee simple of the property described in Exhibit "A" which is attached to the Declaration. Exhibit "A" sets forth a legal metes and bounds description of the property as containing 1.089 acres of land more or less. The Declaration references the two acre parcel subsequently conveyed to ... Restoration, and identifies it as "flexible real estate" indicating that it was to be organized as a separate condominium known as Riverwatch II Condominium....

The [Association] argues that the two acre parcel was never formally subdivided from the larger three plus acre parcel. While the two acre parcel may never have been subdivided from the condominium parcel through the township, this does not preclude the property from being divided in fact. In *Guido v. Township of Sandy*, [584 Pa. 93, 880 A.2d 1220 (2005)] the Supreme Court, while rejecting that a "division-in-fact" had occurred in that case such that the property would be considered subdivided, nonetheless suggested that under different circumstances, with the definition in the [Pennsylvania Municipalities Planning Code (MPC), Act of July 13, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101—11202,] for subdivision including the language "by any means", a conclusion could be required that a property was de facto subdivided, even if not a governmentally recognized subdivision, such that a portion of the property could be conveyed without subdivision approval. The court further stated that whether or not a property requires subdivision approval is solely a land use issue with no effect on whether a grantee owns legal title.

The court concluded that a de facto subdivision had occurred; ... Restoration ... is the owner of the two acre parcel; and the two acre parcel is not part of the common ground of the condominium owned by [the Association]. For these reasons, this court granted [Restoration]'s Motion for Summary Judgment.

Trial Court Opinion at 4–5.

9. This Court's scope of review of a trial court's grant of summary judgment is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Riverwatch Condominium Owners Association.* A trial court may only grant summary judgment where the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Id.*

parcel across the Southwest corner of the Riverwatch I one-acre parcel.[10]

■ The Association first claims that the trial court erred in granting Restoration's motion for summary judgment because Restoration was never conveyed valid title to the Riverwatch II two-acre parcel. More specifically, the Association contends that Restoration was never conveyed valid title to the Riverwatch II two-acre parcel because it was never formally subdivided from the original 3.1593–acre parcel as required by the Tinicum Township Subdivision Ordinance[11] and the MPC.[12] In support of this assertion, the Association cites to Section 1 of the Act of May 28, 1895, P.L. 124, *as amended,* 21 P.S. § 399[13], which prohibits the sale of parcels of property prior to the recording of their subdivision. In addition, the Association asserts that the deed conveying title to Restoration refers to a 1996 Site Plan that does not exist and, as a result, Restoration was aware of its invalid title.

However, as noted above, the parties agreed in the trial court that "[t]he dispute regarding title to the Two Acre Parcel will proceed under ... Restoration's Counterclaim for Quiet Title pursuant to Pa. R.Civ.P. 1061(b)(1), confirming [the Association]'s Count II Action in Ejectment." RR at 33. With respect to actions in ejectment, the Superior Court has noted the following:

> The plaintiffs' burden in an action of ejectment at law is clear; they must

---

10. We initially note that the Association's brief filed in support of the instant appeal does not conform to the requirements of the Pennsylvania Rules of Appellate Procedure. More specifically, Rule 2115(a) provides, in pertinent part, that "[t]he text of the order or other determination from which an appeal has been taken or which is otherwise sought to be reviewed *shall be set forth verbatim immediately following the statement of jurisdiction* ...." (emphasis added). Although the Association attaches a copy of the trial court's order as an appendix to its appellate brief, as indicated above, Rule 2115(a) specifically mandates that it be set forth verbatim in the brief immediately following the statement of jurisdiction. We bring this omission to counsel's attention because the consequences for failing to conform to the Rules can be severe. *See* Pa.R.A.P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects in the brief ... of the appellant are substantial, the appeal or other matter may be quashed or dismissed.").

11. In its appellate brief, the Association does not cite to any specific provision in the Township's Subdivision Ordinance, or indicate that the relevant provisions of that Ordinance have been made part of the record in this case. Rather, the Association merely states that "Tinicum Township has a subdivision ordinance enacted pursuant to the MPC. It is undisputed that at no time was this lot in question separately subdivided." Brief for Appellant at 12.

12. In pertinent part, Section 507 of the MPC provides that "[w]here a subdivision and land development ordinance has been enacted by a municipality under the authority of this article no subdivision or land development of any lot, tract or parcel of land shall be made ... except in accordance with the provisions of such ordinance." 53 P.S. § 10507.

13. Section 1 provides, in pertinent part:

When any tract or piece of land within the limits of any county of this commonwealth, which has been or shall be hereafter subdivided into lots, and any lot has been sold from the tract or piece of land so divided according to said plan of subdivision without said plan of subdivision having been recorded, it shall be the duty of the owner of said tract of land ... to record said plan of subdivision in the office of the recorder of deeds ... in the proper county ...; and if such owner ... shall fail to cause said plan of subdivision of said tract of land ... to be recorded in the said office, such owner ... shall forfeit and pay the sum of one hundred ($100.00) dollars for each failure to record such plan of subdivision....

establish the right to immediate exclusive possession. Recovery can be had only on the strength of their own title, not the weakness of defendant's title. The crux of an ejectment action, therefore, rests with the plaintiffs' ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title.

*Doman v. Brogan,* 405 Pa.Super. 254, 592 A.2d 104, 108 (1991) (citations omitted).

Thus, in order to survive summary judgment [14] in the case *sub judice,* it was the Association's initial burden to establish *prima facie* title to the disputed Riverwatch II two-acre parcel, and its title could not be based solely upon the purported weakness of Restoration's title. Id.[15] As a result, the Association's reliance on the purported weakness of Restoration's title to the disputed Riverwatch II two-acre parcel is not dispositive in our determination of whether or not the trial court erred

in granting Restoration's motion for summary judgment, and the Association's allegation of error in this regard is patently without merit.

■ The Association next claims that the trial court erred in granting Restoration's motion for summary judgment because the disputed Riverwatch II two-acre parcel was conveyed to the Association based upon a number of the Declarant's acts and omissions. More specifically, the Association claims [16] that title was conveyed because: (1) ambiguities regarding the Declarant's reservation of his rights to the flexible real estate in Section 15.2 of the Declaration of Condominium must be construed against the Declarant and in the Association's favor; (2) there was no convertible real estate shown on the recorded Site Plans as required by Section 3210 of the PUCA, 68 Pa.C.S. § 3210 [17]; (3) the Declarant failed to provide a statement in the Declaration of Condominium regarding the disposition of flexible real estate that is

---

14. *See Ertel v. Patriot–News Company,* 544 Pa. 93, 100–101, 102, 674 A.2d 1038, 1042 (1996) ("Allowing non-moving parties to avoid summary judgment where they have no evidence to support an issue on which they bear the burden of proof runs contrary to the spirit of Rule 1035. We have stated that the 'mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial.' We have a summary judgment rule in this Commonwealth in order to dispense with a trial of a case (or, in some matters, issues in a case) where a party lacks the beginnings of evidence to establish or contest a material issue.... Thus, we hold that a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.") (citations omitted).

15. *See also Dunn v. Milanovich,* 302 Pa. 184, 186–187, 152 A. 757, 758 (1930) ("In this action of ejectment, plaintiffs and defendant agreed that their respective titles were derived through a deed which was offered in evidence. This was conclusive of the title to that date. Plaintiffs also produced evidence tending to show a direct line of title from the grantee in that deed to themselves. This made out a prima facie case in their favor, and called upon defendant to prove his alleged title, if he wished to defeat plaintiffs' apparent ownership.") (citations omitted).

16. In the interest of clarity, we consolidate and reorder the claims made by the Association in this regard.

17. Section 3210(b)(4) of the PUCA provides, in pertinent part, that "[e]ach plat must show ... [t]he location and dimensions of any convertible real estate, labeled as such." 68 Pa. C.S. § 3210(b)(4).

not added to the condominium as required by Section 3206 of the PUCA, 68 Pa.C.S. § 3206[18]; and (4) the Declarant conveyed the flexible real estate to the Association when the Declaration of Condominium was filed based on his failure to formally subdivide the Riverwatch II two-acre parcel.[19],[20],[21]

With respect to interpreting the provisions of the Declaration of Condominium,

**18.** Section 3206(15) of the PUCA provides, in pertinent part, that:

> The declaration for a flexible condominium shall include . . .:
>
> * * *
>
> (15) A statement of the extent to which any assurances made in the declaration regarding additional or withdrawable real estate . . . apply in the event any additional real estate is not added to or any withdrawable land is withdrawn from the condominium, or a statement that those assurances do not apply if the real estate is not added to or is withdrawn from the condominium.

68 Pa.C.S. § 3206(15).

**19.** As a corollary to this allegation of error, the Association also claims that its interpretation of the Declaration should prevail over all others pursuant to Section 12.2. Section 12.2 of the Declaration provides, in pertinent part, that *"[i]n the event of any dispute or disagreement between any Unit Owners* relating to the Property, or any questions of interpretation or application of the provisions of this Declaration, the Plats and Plans, . . . or any Exhibits attached to the foregoing documents, the determination thereof by the Executive Board *shall be final and binding on each and all such Unit Owners . . . "* RR at 149 (emphasis added). Thus, by its clear and unambiguous terms, the provisions of Section 12.2 only apply to disputes or disagreements between unit owners, and its determination in this regard is only final and binding on these owners. Thus, under Section 12.2, the Association's interpretation or application of the Declaration is clearly not binding on either this Court or the trial court.

**20.** As a corollary to this allegation of error, the Association also claims that the disputed Riverwatch II two-acre parcel was conveyed to the Association by the doctrine of estoppel. More specifically, the Association contends that the Declarant's representations can be used to support an estoppel defense in the instant action pursuant to Section 3108 of the PUCA, 68 Pa.C.S. § 3108. However, in the absence of any assertion that Restoration was aware of the Declarant's purported representations, an estoppel defense is not available in the instant action. *See, e.g., Kaul v. Lawrence*, 73 Pa. 410 (1873) (A bona fide grantee is not affected by an equitable estoppel against his grantor.). *See also United States v. Chatham*, 298 F.2d 499, 501 (4th Cir.1962) ("More importantly, however, application of the doctrine of estoppel does not extinguish the asserted right. The doctrine presupposes existence of the right, but denies its judicial enforcement because the circumstances make judicial enforcement inequitable. This is particularly true in real estate matters, where the policy of the recording acts prevents the assertion of an equitable defense, good against a predecessor in title, if the successor in title had no actual or constructive notice of the facts constituting the basis for the defense."); *Evans v. Wittorff*, 869 S.W.2d 872, 875 (Mo. Ct.App.1994) ("Whatever may be the merits of Wittorff's argument, we find is unnecessary to consider it, for estoppel will not ordinarily lie against grantees of a conveyance (like Plaintiffs). 'The general rule is that a grantee will not be estopped by any act, conduct, or declaration of his grantor of which the grantee had no notice even though such act, conduct or declaration would support an estoppel against the grantor.' ") (citations omitted).

**21.** The Association raises additional allegations of error in this regard, but it has failed to direct this Court to where these issues were raised before the trial court as required by Rules 2117(c) and 2119(e) of the Pennsylvania Rules of Appellate Procedure. As a result, in the absence of any indication by the Association that these claims were properly raised before the trial court, they will not be addressed for the first time by this Court in this appeal. Pa.R.A.P. 302(a); *Monroe Meadows Housing Partnership, LP v. Municipal Council of the Municipality of Monroeville*, 926 A.2d 548 (Pa.Cmwlth.2007). *See also Kimmel v. Somerset County Commissioners*, 460 Pa. 381, 384, 333 A.2d 777, 779 (1975) ("[I]t is a fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court.") (citations omitted).

this Court has stated the following, in pertinent part:

> The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous. A contract is ambiguous if it is reasonably susceptible of different interpretations and capable of being understood in more than one sense. A determination of whether a contract is ambiguous is a question of law.

*Mayflower Square Condominium Association v. KMALM, Inc.*, 724 A.2d 389, 394 (Pa.Cmwlth.1999). *See also* Article XVII of the Declaration of Condominium, RR at 156 ("The provisions of this Declaration shall be liberally construed in order to effectuate Declarant's desire to create a uniform plan for development and operation of condominium project...."); Article XVIII of the Declaration of Condominium, RR at 156–158 ("The provisions of this Declaration shall be deemed independent and severable, and the invalidity or unenforceability of any provision or portion thereof shall not affect the validity or enforceability of any other provision or portion thereof unless the deletion of such invalid or unenforceable provision shall destroy the uniform plan for development and operation of the condominium project which this Declaration is intended to create.").

As noted above, Section 1.2 of the Declaration explicitly designated "1.080 acres more or less" as the total area of the Riverwatch I Condominium. RR at 114. In addition, Section 1.1 explicitly designated "[t]he balance of the larger tract", i.e. the Riverwatch II two-acre parcel, "as a separate condominium...." Id. These provisions are explicitly confirmed by the metes and bounds description in Exhibit A,

which states that the Riverwatch I one-acre parcel is bordered on the Southern side "at the edge of property now or formerly of Riverwatch II Condominium; thence by Riverwatch II Condominium the five following courses and distances...." Id. at 115. The description is likewise confirmed by the Site Plan that was recorded on March 6, 1991 and made part of the Declaration under Section 1.1, and by the Site Plan that was recorded on October 11, 1995. *See* Id. at 160, 161. Moreover, Section 3.1 of the Declaration explicitly states that "[t]he Plats and Plans show the location and dimensions of the land, buildings and improvements comprising the Property, and the location of the Units and certain of the Common Elements and Limited Common Elements." Id. at 127. Thus, under the clear and unambiguous provisions of the Declaration and the recorded Site Plans, the Riverwatch II two-acre parcel was explicitly a separate and distinct condominium from the Riverwatch I Condominium that was established by the Declaration and that was to be conveyed to the unit owners.

Nevertheless, the Association argues that the Riverwatch II two-acre parcel was conveyed to it when the Declaration of Condominium was filed due to the foregoing enumerated deficiencies. However, this claim ignores the clear and unambiguous language of the Declaration establishing the Riverwatch I Condominium, and it is based upon the premise that ambiguities in the Declaration establishing the Riverwatch I Condominium somehow affect the title to the property comprising the separate and distinct Riverwatch II Condominium. Even if it is assumed, as the Association contends, that the Declarant failed to adequately set forth the "flexible real estate" for the Riverwatch I Condominium in the Declaration or in the recorded Site Plans establishing that condominium, and that he failed to reserve any rights in the

Riverwatch I Condominium's "flexible real estate" in any of those documents, the Association utterly fails to set forth how these purported deficiencies affect title to the two-acre parcel comprising the separate and distinct Riverwatch II Condominium.[22] In short, the Association's allegations of error in this regard are patently without merit.

■ Finally, the Association claims that the trial court erred in granting Restoration's motion for summary judgment because the court erred in granting a Restoration a right of access to the Riverwatch II two-acre parcel across the Southwest corner of the Association's Riverwatch I one-acre parcel. However, as noted above, Section 7.1(b) of the Declaration states that, in addition to the easements specifically granted by the PUCA, "[t]he Condominium shall be subject to ... [e]asements for driveways through the Condominium as shown on the Plats and Plans...." RR at 134. In addition, Section 7.1(n) of the Declaration states that "[a]ll easements, rights and restrictions described and mentioned in this Declaration are easements appurtenant, running with the land and the improvements thereon...." *Id.* at 137. Further, both the Site Plan that was recorded on March 6, 1991 and made part of the Declaration under Section 1.1, and the Site Plan that was recorded on October 11, 1995, show driveway access to the parking lot on the Riverwatch II two-acre parcel from Carre Avenue across a portion of the Southwest corner of the Riverwatch I one-acre parcel. *See* RR at 160, 161.[23]

**22.** Moreover, the Declarant's failure to formally subdivide the separate Riverwatch II two-acre parcel from the larger parcel does not affect the title to the two-acre parcel that was ultimately conveyed to Restoration. *See, e.g., Ryan James Realty, LLC v. Villages at Chester Condominium Association,* 153 N.H. 194, 199, 893 A.2d 661, 666 (2006) ("The above statutory language[, in Section 676:16 of the New Hampshire Revised Statutes (RSA) relating to the fines imposed for transferring land without proper subdivision approval,] clearly states that a municipality's remedy against one who transfers land without first obtaining the necessary subdivision approval is a fine or an injunction, neither of which the Town has sought in this case. In relying upon *Town of Windham [v. Lawrence Savings Bank,* 146 N.H. 517, 776 A.2d 730 (2001) ], the defendants failed to consider our discussion of the municipality's remedy in that case. We stated: 'When a property owner transfers or sells land before a subdivision has been approved by the planning board, RSA 676:16 provides that the owner shall pay a $500 civil penalty for each lot or parcel transferred or sold without approval.' *Town of Windham,* 146 N.H. at 520, 776 A.2d [at 732]. Rather than voiding the bank's transfer to the third party, we affirmed the trial court's conclusion that the bank violated RSA 676:16 and was subject to a fine. *Id.* at 523, 776 A.2d [at 734]. The same reasoning applies to the instant case. Whether the Declarant was required to obtain subdivision approval before creating an expandable condominium does not affect title to the disputed land. RSA 676:16 provides that the penalty for failure to obtain appropriate subdivision approval is a civil fine for each parcel transferred or an injunction. Assuming without deciding that the Declarant needed subdivision approval to transfer its land in accordance with the creation of an expandable condominium, Ryan would still have title to the disputed land.").

**23.** *See also* Section 11.1 of the Declaration, RR at 148 ("[E]ach present and future Owner ... of a Unit shall be subject to and shall comply with the provisions of the [PUCA], the Plots and Plans, ... and all Exhibits to the foregoing, and with the covenants and conditions and restrictions as set forth in this Declaration, the Plats and Plans, ... all Exhibits to the foregoing, and the deed to such Unit.... The acceptance of a deed ... to any Unit, or the entering into of a lease or the entering into occupancy of any Unit, shall constitute an agreement that the provisions of the [PUCA], this Declaration, the Plats and Plans, ... all Exhibits to the foregoing, and the covenants, conditions and restrictions set forth in the foregoing and in the deed to such Unit are accepted and ratified by such grantee.... All of such provisions shall be cove-

■ An "easement" is a non-possessory interest in the land in the possession of another that entitles its holder to a limited use of the land in which the interest exists. *In re Condemnation Proceeding by South Whitehall Township Authority,* 940 A.2d 624 (Pa.Cmwlth.2008). As the Pennsylvania Supreme Court has noted:

> Existence of a servient tenement for the beneficial use of a dominant tenement is a prerequisite to the creation of an easement appurtenant. Creation of an easement appurtenant is accomplished by reserving unto the grantor an easement or right of way over the land conveyed, said right of way being intended to benefit other lands retained by the grantor. This reservation is conceptually fused with the land it benefits and passes with the land if there is a subsequent conveyance. An expressly created easement appurtenant can conceivably last forever.

*Brady v. Yodanza,* 493 Pa. 186, 189, 425 A.2d 726, 727 (1981) (citation and footnote omitted). In addition, the court noted that "[m]any cases recognize that where an easement is annexed as an appurtenance to land by an express or implied grant or reservation (here, an express reservation), ... it passes with a transfer of the land although not specifically mentioned in the transfer.... [T]he easement passes by operation of law...." *Id.* at 190–191, 425 A.2d at 728 (citations omitted). *See also* Restatement (Third) of Property, Servitudes § 5.1 cmt. b (2000) (*"Appurtenant interests pass automatically.* Under the rule stated in this section, no instrument of transfer is necessary to pass servitude benefits and burdens to successors to the benefited or burdened property interests: they pass automatically on transfer of the

nants running with the land and shall bind any person having at any time any interest or estate in such Unit, as though such provisions

property to which they are appurtenant. The Statute of Frauds does not require that an appurtenant servitude be mentioned in the instrument of transfer.").

As indicated above, in the Declaration of Condominium and the recorded Site Plans, the Declarant expressly reserved an appurtenant easement for access to the Riverwatch II two-acre parcel by a driveway across the Southwest corner of the Riverwatch I one-acre parcel. That easement was subsequently conveyed to Restoration as part of the dominant tenement by operation of law. *Brady.* As a result, the trial court did not err in recognizing Restoration's right of access to the Riverwatch II two-acre parcel across a portion of the Riverwatch I one-acre parcel, and the Association's allegation of error in this regard is likewise without merit.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 29th day of May, 2009, the order of the Court of Common Pleas of Delaware County, dated May 9, 2008 at No. 05–002019, is AFFIRMED.

■

were recited and stipulated at length in each and every deed, conveyance, mortgage or lease therefore.").